[No. A094472. First Dist., Div. Five. June 28, 2002.]

THEODIS CARROLL, JR., et al., Plaintiffs and Respondents, v.
INTERSTATE BRANDS CORPORATION, Defendant;
WAUKEEN Q. McCOY, Claimant and Appellant.

**COUNSEL**

Zachary M. Best for Claimant and Appellant.

Daniel U. Smith; Paul B. Justi; Law Offices of Joseph Alioto & Angela Alioto, Angela Alioto and Steven L. Robinson for Plaintiffs and Respondents.

**OPINION**

**JONES, P. J.**—The question before us in this appeal is whether the trial court properly ordered an attorney's lien "expunged." We conclude the trial

court lacked jurisdiction to assess the validity of the lien, and we reverse the order.

## BACKGROUND

In two consolidated actions below, trial was held on the claims of several plaintiffs for damages resulting from race-based employment discrimination. All 23 plaintiffs were initially represented by the Law Offices of Joseph Alioto and Angela Alioto (hereafter Alioto). Alioto in turn hired Attorney Waukeen Q. McCoy to perform certain legal work on the case. According to McCoy, he was promised a percentage of the recovery as compensation for his services.

Eventually McCoy left the employ of Alioto, and three of the plaintiffs substituted McCoy as their attorney of record in place of Alioto. Those three plaintiffs were represented by McCoy through trial. A jury verdict was rendered in favor of plaintiffs, although retrials are pending for the three plaintiffs represented at trial by McCoy.

Alioto and McCoy hotly disputed the attorney fees owed to McCoy, and that dispute resulted in a separate lawsuit filed by McCoy against Alioto to recover his "earnings."[1] Additionally, McCoy filed a notice of lien within the instant employment discrimination lawsuit for the value of his services performed for 11 of the plaintiffs represented by Alioto.

After the verdict was rendered, the 11 plaintiffs filed a motion to expunge McCoy's attorney's lien, asserting that because McCoy had no contractual relationship with them, McCoy had no valid attorney's lien. McCoy opposed the motion on the ground that the trial court had no jurisdiction to determine the validity of an attorney's lien. The trial court granted the plaintiffs' motion. McCoy now appeals from the order directing that his attorney's lien be expunged as to the 11 plaintiffs represented by Alioto.[2]

## DISCUSSION

### A. Creation of an Attorney's Lien

A lien may be created by contract or by operation of law. (Civ. Code, § 2881.) In most jurisdictions a lien is established by operation of law in

---

[1] We are informed that in two other lawsuits, Alioto sued McCoy for, among other things, taking the three clients with him when he left the Alioto firm, and McCoy sued Alioto for malicious prosecution.

[2] The parties do not dispute that the order is appealable. (See *Trimble v. Steinfeldt* (1986) 178 Cal.App.3d 646, 649-650 [224 Cal.Rptr. 195] [order denying motion to expunge attorney's lien]; *Bandy v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 230, 233, fn. 2 [126 Cal.Rptr. 890] [order granting attorney's lien].)

favor of an attorney to satisfy attorney fees and expenses out of the proceeds of a prospective judgment. (See 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 192, p. 248.) In California, an attorney's lien is created only by contract—either by an express provision in the attorney fee contract (*Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657]; *Haupt v. Charlie's Kosher Market* (1941) 17 Cal.2d 843 [112 P.2d 627]) or by implication where the retainer agreement provides that the attorney is to look to the judgment for payment for legal services rendered (*Wagner v. Sariotti* (1943) 56 Cal.App.2d 693, 697 [133 P.2d 430]; see *Gelfand, Greer, Popko & Miller v. Shivener* (1973) 30 Cal.App.3d 364, 375, 377 [105 Cal.Rptr. 445]; *Skelly v. Richman* (1970) 10 Cal.App.3d 844, 865 [89 Cal.Rptr. 556]).[3] Unlike a service lien or a mechanic's lien, for example (Civ. Code, §§ 3051, 3110), an attorney's lien is not created by the mere fact that an attorney has performed services in a case. (*Ex parte Kyle* (1850) 1 Cal. 331; see *Isrin v. Superior Court* (1965) 63 Cal.2d 153, 157 [45 Cal.Rptr. 320, 403 P.2d 728]; see generally 1 Witkin, Cal. Procedure, *supra*, Attorneys, §§ 192-193, pp. 248-249.)

 Because an attorney's lien is not automatic and requires a contract for its creation, a direct contractual relationship between the attorney and the client is essential. When the client enters into a retainer agreement with one particular attorney, a lien in favor of another, albeit associated attorney is neither express nor implied and does not exist. (*Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1019 [43 Cal.Rptr.2d 717]; *Trimble v. Steinfeldt, supra*, 178 Cal.App.3d at p. 651.) Associate counsel must look to the client's attorney for compensation, not to the client. (178 Cal.App.3d at pp. 651-652.)

 What is not essential to creation of an attorney's lien is the filing of a *notice of lien*. Unlike a judgment creditor's lien, which is created when the notice of lien is filed (Code Civ. Proc., § 708.410, subd. (b)), an attorney's lien is a "secret" lien; it is created and the attorney's security interest is protected even without a notice of lien. (*Cetenko v. United California Bank, supra*, 30 Cal.3d at pp. 532-533; *Cappa v. F & K Rock & Sand, Inc.* (1988) 203 Cal.App.3d 172, 174-175 [249 Cal.Rptr. 718]; *Hansen v. Jacobsen* (1986) 186 Cal.App.3d 350, 357 [230 Cal.Rptr. 580].) An attorney may, however, choose to file a notice of lien in the underlying action, and the common practice of doing so has been held permissible and even advisable. (*Valenta v. Regents of University of California* (1991) 231 Cal.App.3d 1465,

---

[3] If a lien is created by contract, the lien survives the discharge of the attorney, and the attorney, although no longer entitled to the fees contracted for, remains entitled to recover from the judgment the reasonable value of services actually performed. (*Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 598 [124 Cal.Rptr. 297].)

1470 [282 Cal.Rptr. 812]; *Hansen v. Jacobsen, supra,* 186 Cal.App.3d at pp. 357-358.)

It bears emphasizing that a notice of lien is not the same as the lien (the security interest) or the lien claim. As will be seen in the discussion that follows, a lack of precision in the use of these terms all too often creates confusion. (See *Valenta v. Regents of University of California, supra,* 231 Cal.App.3d at pp. 1469-1470; *Hansen v. Jacobsen, supra,* 186 Cal.App.3d at pp. 354, 357.)

## B. *Determining the Existence of an Attorney's Lien*

█ Appellate courts have consistently held that the trial court in the underlying action has no jurisdiction to determine the existence or validity of an attorney's lien on the judgment. (*Law Offices of Stanley J. Bell v. Shine, Browne & Diamond, supra,* 36 Cal.App.4th at pp. 1019-1020; *Valenta v. Regents of University of California, supra,* 231 Cal.App.3d at p. 1470; *Hansen v. Jacobsen, supra,* 186 Cal.App.3d at p. 356; *Hendricks v. Superior Court* (1961) 197 Cal.App.2d 586, 588-589 [17 Cal.Rptr. 364].) The trial court does have fundamental jurisdiction over the subject matter and over the parties. Nevertheless, because the attorney is not a party to the underlying action and has no right to intervene, the trial court acts in excess of its jurisdiction when it purports to determine whether the attorney is entitled to foreclose a lien on the judgment. (*Hendricks v. Superior Court, supra,* 197 Cal.App.2d at pp. 588-589; see also *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond, supra,* 36 Cal.App.4th at pp. 1019-1020; *Valenta v. Regents of University of California, supra,* 231 Cal.App.3d at p. 1470; *Hansen v. Jacobsen, supra,* 186 Cal.App.3d at p. 356.) Nor can the court entertain a motion to terminate the lien. (*Valenta v. Regents of University of California, supra,* 231 Cal.App.3d at p. 1470.) After the client obtains a judgment, the attorney must bring a separate, independent action against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it. (*Law Offices of Stanley J. Bell v. Shine, Browne & Diamond, supra,* 36 Cal.App.4th at p. 1020; *Valenta v. Regents of University of California, supra,* 231 Cal.App.3d at pp. 1469-1470; *Bandy v. Mt. Diablo Unified Sch. Dist., supra,* 56 Cal.App.3d at pp. 234-235; see *Hansen v. Jacobsen, supra,* 186 Cal.App.3d at p. 356.) An order within the underlying action purporting to affect an attorney's lien is void. (*Valenta v. Regents of University of California, supra,* at p. 1469, fn. 2.)

In the case before us, the trial court's oral remarks reflect a finding that McCoy had no attorney's lien because the essential element of a direct contractual relationship was missing: "I just don't think there's any question

that . . . there is a right to file a lien, only if there is an agreement between, in this case, Mr. McCoy and the client. . . . [A] lien has been improperly filed on the face of it, not because Mr. McCoy didn't do any work, or not because his agreement with Ms. Alioto is different from what Ms. Alioto claims, but simply because it appears indisputably that there is no direct agreement between Mr. McCoy and these clients. . . . All I'm saying is that Mr. McCoy, since he did not have an agreement directly with the clients, does not have a right to file a lien against any recovery the clients may obtain in this litigation."

 It is apparent that the trial court had no jurisdiction to determine the existence of an attorney's lien. Whether McCoy and the 11 plaintiffs had a direct contract and whether that contract impliedly created an attorney's lien are questions of fact to be decided in an independent action brought by McCoy to enforce his lien claim. (*Gelfand, Greer, Popko & Miller v. Shivener, supra,* 30 Cal.App.3d at p. 375.) They are not questions to be resolved in the underlying action.

The trial court seems to have relied on *Trimble v. Steinfeldt, supra,* 178 Cal.App.3d 646. In that case, the associated attorney filed a notice of lien in the underlying action, and the plaintiff/client moved to "expunge" the lien. The trial court denied the motion, but the appellate court held that the motion to expunge should have been granted. (*Id.* at pp. 649, 650.) The appellate court reasoned that without an agreement between the client and the attorney "there is neither an express nor an implied basis for impressing a lien against [the client] in [the attorney's] favor." (*Id.* at p. 651.)

The holding of *Trimble,* however, concerns the *creation* of a lien and the necessity for a direct contractual relationship between the attorney and the client. No question was raised in that case regarding the *jurisdiction* of the trial court to determine whether a lien had been created. When the *Trimble* court endorsed the remedy of granting the plaintiff's motion to expunge, it did so without analysis of the jurisdiction issue. To the extent that *Trimble* suggests a proceeding may be had within the underlying action to extinguish an attorney's lien, the opinion conflicts with *Bell, Valenta,* and other cases limiting the jurisdiction of the court in the underlying action. Because a case is not authority for a proposition not considered (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; *In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 151 [242 Cal.Rptr. 649]), *Trimble* does not justify the trial court's assumption of jurisdiction over the lien here.

C. *Expunging the Notice of Lien*

 The trial court's remarks suggest the court may simply have intended to expunge the notice of lien rather than the lien itself: "The Court

already has jurisdiction over this action. And if a lien is improperly filed in this action, it can be expunged. It can't be enforced. I can't conduct a hearing to determine how much might be due for legal services to which this lien attaches. But if a lien is on *its* face just improperly filed, the court has got jurisdiction to strike it, to expunge it."[4] Only a notice of lien is "filed." Only a notice of lien has a "face."[5] ■ "Expunge" is a verb used for an act of erasing or destroying information. (Black's Law Dict. (6th ed. 1990) p. 582.) It is a term commonly used for eliminating written records, such as a *notice* of lis pendens. (Code Civ. Proc., §§ 405.30-405.39.)[6]

As we have already indicated, a notice of lien is not necessary for the creation of an attorney's lien. Nevertheless, the practice of filing a notice of attorney's lien in the underlying action has become commonplace, and the courts have endorsed the practice. (*Valenta v. Regents of University of California, supra,* 231 Cal.App.3d at p. 1470; *Hansen v. Jacobsen, supra,* 186 Cal.App.3d at pp. 357-358.) We do, however, question the wisdom of the practice.[7]

To our knowledge, no court has ever articulated a rationale for filing what is essentially a "superfluous" document. (*Cetenko v. United California Bank, supra,* 30 Cal.3d at p. 533, fn. 5.) Because a notice of lien is not necessary for the creation of a lien, the filing of a notice of lien has no effect on the priority of the attorney's lien over others. By statute, different liens on the same property have priority according to the time of their creation. (Civ. Code, § 2897.) ■ An attorney's lien is created and takes effect at the time the fee agreement is executed. (*Cetenko, supra,* 30 Cal.3d at p. 534.) Thus, where an attorney's lien was created before the filing of an action, the attorney's lien has priority over a lien created after the action was commenced. (*Id.* at pp. 534-536 [judgment creditor's lien]; *Cappa v. F & K Rock & Sand, Inc., supra,* 203 Cal.App.3d at pp. 174-176 [county's lien as judgment creditor for child support arrearages]; see *Bree v. Beall* (1981) 114 Cal.App.3d 650, 657-658 [171 Cal.Rptr. 73] [federal tax lien].)

---

[4] The trial court's written order, however, purported to affect the lien itself: "The *lien* referenced in the Notice of Lien by attorney Waukeen McCoy, dated February 8, 2000, is hereby order[ed] expunged." (Italics added.)

[5] The trial court's ruling cannot be construed as a determination that the notice of lien was facially invalid—e.g., containing the wrong caption or case number. It is obvious that the trial court concluded that the notice of lien was improperly filed because the attorney's lien itself had never been created.

[6] In contrast, the verb used for ending a lien—an intangible security interest—is "extinguish." (Civ. Code, §§ 2909-2913.)

[7] We also find a logical inconsistency in the holdings that the trial court does have jurisdiction to accept a notice of attorney's lien for filing in the underlying action but lacks jurisdiction to otherwise deal with the lien.

The principal function served by filing a notice of attorney's lien seems to be to assist a discharged attorney who faces the risk that the former client may "settle around" the lien. The attorney may file the notice of attorney's lien in the hope that the defendant or its insurer will make the settlement check payable jointly to the client, the new attorney and the discharged attorney, to avoid taking a position in the dispute. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶¶ 1:209, 1:211.) The unfortunate effect, however, is that "[t]he settlement proceeds will thus be tied up until everyone involved can agree on how the money should be divided . . . or until one or the other brings an independent action for declaratory relief." (*Id.* at ¶ 1:436, italics omitted.)

We observe that notices of other types of liens, being statutory rather than judicial creations, are subject to statutorily mandated procedures to protect the debtor. By way of example, a claimant asserting an interest in real property must record a notice of lis pendens alleging the real property cause of action, and the claimant must file the notice with the court in which the real property action is pending. (Code Civ. Proc., §§ 405.20, 405.22.) That court has the power to order the notice expunged if the pleading does not actually contain a real property claim or if the claimant fails to establish the probable validity of the real property claim. (Code Civ. Proc., §§ 405.31, 405.32.) A judgment creditor must file a notice of lien that identifies the details of the judgment and the amount required to satisfy the judgment. (Code Civ. Proc., § 708.420.) Notably, the judgment creditor may intervene in the action in which the notice of lien is filed (Code Civ. Proc., § 708.430), and the judgment debtor is entitled to a hearing on his claim of exemption for any portion of the judgment proceeds. (Code Civ. Proc., § 708.450.)

In contrast, an attorney who files a notice of attorney's lien need not make any showing in the underlying action that the lien is probably valid. Because the attorney is neither a party nor an intervener in the action, the appellate courts have consistently held that the trial court remains without jurisdiction to assess the validity of the attorney's lien despite the fact that a notice of lien was filed in the underlying action. (*Law Offices of Stanley J. Bell v. Shine, Browne & Diamond, supra,* 36 Cal.App.4th at p. 1019; *Valenta v. Regents of University of California, supra,* 231 Cal.App.3d at p. 1469; see *Hansen v. Jacobsen, supra,* 186 Cal.App.3d 350.) Consequently, an attorney's lien impairs the ability of a successful plaintiff to obtain the full proceeds of the judgment even though the attorney may not have actually performed services in the case, may not have had a direct contract with the client, or may not have had a contract that expressly or impliedly gave the attorney a lien on the judgment.

The leverage that a notice of attorney's lien gives to an attorney makes the trial court's acceptance of that notice of lien for filing far more than an idle or insignificant act. It is clear to us that some procedural safeguards are called for to protect clients from the mischief that could result from a false notice of attorney's lien. We believe, however, that the task of designing protective procedures should be left to the Legislature, and decline to impose a set of procedural rules by judicial fiat. We do encourage the Legislature to grant trial courts the authority to strike or expunge the notice of lien when the attorney fails to make a prima facie showing that he has a valid lien on the judgment.

It bears emphasizing that the attorney's lien claim must be litigated in a separate action, even where the attorney has a contract with the client. (*Hansen v. Jacobsen, supra,* 186 Cal.App.3d at p. 356 ["Because the discharged attorney is not a party to the pending action and may not intervene, the trial court has no jurisdiction to award fees to that attorney. Therefore, even though a contractual lien continues to be viable after discharge, a subsequent, independent action is required to establish the amount of the lien and to enforce it."]; *Bandy v. Mt. Diablo Unified Sch. Dist., supra,* 56 Cal.App.3d at p. 235.) We do not suggest the act of filing the notice of lien implies a hostile motive or an intent to impede the expeditious conclusion of the client's claim. Rather we raise a concern, as a matter of policy, that the interest of the client and of the attorney-claimant merit a more expeditious resolution than is currently afforded by the practice of filing a notice of lien that must then be litigated in a new action.

Ironically, the trial court's order in the present case seems to have been an attempt to provide the needed protection to the plaintiff-clients. The trial court seems to have concluded that the notice of lien should be expunged because McCoy failed to establish the probable validity of his lien on the judgment. Indeed, McCoy produced no evidence of a fee agreement with the plaintiffs. At most, McCoy demonstrated that he performed services in the case and that he may be entitled to recover the reasonable value of his services. He produced nothing to show that he was entitled to look to the plaintiffs' judgment for payment of his legal services. Under the current state of the law, however, in the absence of any legislative directive, we are compelled to conclude that the trial court had no authority to assess the validity of the lien and, consequently, no power to extinguish the lien or to expunge the notice of lien.[8]

---

[8]In light of our decision, we need not decide whether the trial judge should have recused himself from hearing the motion to expunge because of his participation in settlement conferences in the separate lawsuits between McCoy and Alioto.

## DISPOSITION

The order expunging the attorney's lien is reversed. Costs on appeal are awarded to appellant.

Simons, J., and Gemello, J., concurred.