356 B.R. 28 (2006)
In re Donald Allen BUSH (SSN-1767) dba Bush Financial Services, Debtor.
Richard M. Kipperman, Chapter 7 Trustee, Plaintiff,
v.
Sondra S. Sutherland, dba Law Offices of Sondra S. Sunderland, Defendant.
Bankruptcy No. 05-15215-H7, Adversary No. 06-90235-H7.
United States Bankruptcy Court, S.D. California.
November 14, 2006.
*29 *30 Joseph R. Dunn, Esq., Baker McKenzie, San Diego, CA, for Chapter 7 Trustee.
Bill Parks, Esq., Law Office of Bill Parks, Vista, CA, for Sutherland.

MEMORANDUM DECISION
JOHN J. HARGROVE, Bankruptcy Judge.
Chapter 7 trustee, Richard M. Kipperman, (the "trustee"), filed this adversary proceeding against Sondra S. Sutherland ("Sutherland") asserting claims for relief under § 544(a)(1), (2), and (3), § 545(2), and § 547(b).[1]
Sutherland moved for summary judgment contending 1) that her charging lien was valid and attached to the proceeds from the sale of debtor's real property; and 2) that her FLARPL lien was perfected and not subject to a preference attack since it was given in the ordinary course of business. "[I]n an abundance of caution," the trustee's opposition analyzed all the documents evidencing Sutherland's various liens that allegedly secured her attorneys' fees. The trustee's cautious approach raised many issues not addressed in Sutherland's initial pleadings. Accordingly, when the Court heard oral argument on July 7, 2006, both parties argued issues that were outside the scope of Sutherland's initial motion. Thus, the review of Sutherland's summary judgment motion has been extremely challenging due largely to the fact that the issues raised have been a moving target.
After hearing oral argument, the Court authorized additional briefs from both parties on issues regarding the charging lien, the judicial lien and the FLARPL lien, and took those matters under submission.[2]
This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312-D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F),(H) and (K).

I.

FACTS
Prior to his bankruptcy filing, debtor was involved in a dissolution proceeding in which Sutherland was his attorney. On February 3, 2005, debtor entered into a retention agreement with Sutherland which included a provision that allegedly created a charging lien in her favor on money and property due to, or received by debtor as a result of the assets awarded to him in the dissolution proceeding.
On June 8, 2005, a stipulated judgment of dissolution was entered. The stipulated judgment provided, inter alia, that with *31 respect to the real property at 2022 Elevada Street, Oceanside, California (the "real property"), debtor had 90 days to buy out his ex-wife's interest and if unable to do so, the parties agreed that their real property would be sold and the proceeds divided in accordance with the judgment.
On August 10, 2005, the family court judge signed a Stipulation Re: Fees, wherein both debtor and his ex-wife acknowledged that they owed their respective attorneys fees and costs and that such fees and costs would be taken directly out of each party's respective share of escrow proceeds upon the sale of their real property. Sutherland contends that this order created a "judicial lien" on the proceeds.
On August 23, 2005, debtor evidently instructed Sutherland to "do whatever it takes to put a lien" on the real property because he was going to file bankruptcy.
On September 16, 2005, Sutherland filed a notice of Family Law Attorney's Real Property Lien in the dissolution action. The notice provided that debtor intended to record an encumbrance on his interest only in the community real property to pay his attorney's fees and costs. The accompanying declaration noted that the lien was in the amount of $27,110.90. The debtor further provided in his declaration that Sutherland was to include in her lien payments for his share of minor's counsel's fees, mediator fees, and fees owed to Dr. Sparta for his work on custody issues. The debtor further declared that it was "my request and idea that this lien be recorded, to assure that the professionals involved in this case are paid." [See decl. of Donald A. Bush, Notice of Family Law Attorney's Real Property Lien, 3:10-12].
On September 27, 2005, Sutherland declares that she "perfected (that) statutory lien [the FLARPL]" by recording an All-Inclusive Deed of Trust and Assignment of Rents. The deed referenced an underlying promissory note in the amount of $27,110.90.
On October 16, 2005, debtor filed his voluntary chapter 7 petition.
On December 22, 2005, debtor filed an ex parte application to sell the real property. The application stated that debtor had entered into a contract to sell the real property pursuant to a family law court decree. The order approving the sale provided that any distributions to debtor, his ex-wife, and their respective attorneys would be held in an escrow account.
On or about January 3, 2006, the sale closed and net proceeds in the amount of $197,580.85 were held pending further orders from this Court and resolution of the trustee's objection to debtor's homestead in excess of $50,000. This Court found that the debtor was entitled to a homestead exemption in the amount of $150,000.
Sutherland continued to represent debtor in his dissolution action until January 18, 2006, when the family court granted her motion to be relieved as counsel. Sutherland declares that as of that date, debtor owed her $19,738.36.
On January 26, 2006, Sutherland filed her proof of claim asserting a secured claim in the amount of $27,110.90. She evidently amended that proof of claim by reducing it to $19,738.36 ($12,523.02 is for pre-petition services and $7,215.34 is for post-petition services) which represents her attorney services rendered on behalf of debtor.[3]
*32 All proceeds from the sale of the real property have been distributed to the ex-wife, her attorney, debtor, and others pursuant to various orders of this Court with the exception of $27,110.90.

II.

DISCUSSION
A. STANDARDS FOR SUMMARY JUDGMENT
Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, provides that summary judgment:
[S]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Hughes v. United States, 953 F.2d 531, 541 (9th Cir.1992) citing Celotex Cop. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "After the moving party has met its initial burden, Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial." Hughes, 953 F.2d at 541 (citation omitted).
Technically, no cross-motion for summary judgment is necessary . . . because if there is "no genuine dispute respecting a material fact," the court can grant summary judgment sua sponte. Cool Fuel, Inc. v. Connett, 685 F2d 309, 311-312 (9th Cir.1982).
B. THE CHARGING LIEN: WHAT DID IT ATTACH TO?
Sutherland's "Professional Retainer Agreement" provides in relevant part:
The firm shall have a lien in the amount of all fees, costs and other sums clue upon claims and causes of action to which this agreement pertains . . . on any funds or property due to or received by [the Debtor] on the matter(s) covered by this Agreement. This shall include, without limitation, any settlement, judgment, arbitration or other award.
This paragraph serves as the basis for Sutherland's charging lien. At issue is whether Sutherland's charging lien attached to the proceeds from the sale of debtor's real property.
1. ARGUMENTS OF THE PARTIES
Sutherland argues that the language in the contract clearly shows the parties intended to include in her charging lien any of the debtor's real property or its proceeds that he was awarded in the dissolution action. She contends that at the time the parties entered into the fee agreement, both were aware that debtor owned only one substantial asset, i.e., the real property. According to Sutherland, "[t]he language in the fee agreement . . . is much broader and clearly can be interpreted to include the sales proceeds." She further maintains that the parties were both "aware that the only asset would have to be sold or at least borrowed against to allow the debtor to have the ability to pay his debt to . . . Sutherland."
*33 In opposition, the trustee relies primarily on Broach v. Michell (In re Bouzas), 294 B.R. 318 (Bankr.N.D.Cal.2003). In Bouzas, the charging lien was valid, but the court considered whether the lien attached to the debtor's real property or its proceeds. The debtor engaged Michell to represent her in a dissolution action and executed a written attorney-client fee contract that contained a provision similar to the one in this adversary proceeding.[4] At the time of the filing, the community property had not yet been divided, but the real property had been sold and the proceeds were held by Michell in her trust account. After the filing, Michell turned over the proceeds to the trustee. Michell filed a proof of claim for her unpaid fee and asserted that the claim was secured by the contractual lien. The trustee alleged that the lien was avoidable under § 544(a) because it was unperfected by any type of public filing or notice.
The Bouzas court noted that "the attorney charging lien was effective as soon as the contract that creates it is executed" and was "a legally sanctioned `secret lien'". Id. at 321 (citation omitted). Even though the court found the lien valid, it noted that the "critical issue is whether Michell's charging lien gave her an automatically perfected security interest in the debtor's interest in the real property and thus the sale proceeds." Id. at 324.
To determine this issue, the court first looked to the language of the contract and found that it did not express an intent to create a lien directly on the debtor's interest in the real property or its proceeds prior to judgment or settlement. The court noted that because the contract did not express an intent to create a lien on the debtor's interest in the real property or its proceeds, the only other possibility was whether under California law, a charging lien attaches to the subject matter of the underlying litigation. After examining California law, the court found support for the proposition that the agreement gave the attorney an interest in the proceeds of the litigation, but not its subject matter. Id. (citations omitted). Thus, the court ruled that Michell did not have a lien on the proceeds generated from the sale of the debtor's real property.
Similarly, the trustee argues that the language used in paragraph 8.3 of Sutherland's Professional Retainer Agreement, i.e. "Property due to or received by you," does not specifically describe the debtor's real property and, therefore, it could not have been intended to be included in the charging lien. Relying on footnote 5 in Bouzas, the trustee further argues that even if the Court were to assume that the language granted Sutherland a charging lien in debtor's real property and the proceeds, her retainer agreement could no longer be considered the basis for the charging lien and it would not be automatically perfected because it is a lien in the debtor's share of the community property.[5] *34 Bouzas, 294 B.R. at 325 n. 5. In other words, family law attorneys must follow the procedure set forth in California Family Code § 2033 in order to assert a lien on community real property and cannot use a charging lien.
Sutherland distinguishes Bouzas by noting that the language in her Professional Retainer Agreement is broader. She further argues that the community property was divided prior to the filing of the petition so that her lien attached to the debtor's "recovery" as of June 8, 2005. Lastly, Sutherland contends that the Court's comments in footnote 5 in Bouzas are simply dicta.
2. ANALYSIS
Determination of contract or property rights by the bankruptcy courts ordinarily is controlled by state law. See Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Since the Professional Retainer Agreement was entered into in the State of California, California law will determine the extent of Sutherland's charging lien.
In the California Practice Guide for Family Law, the authors note that "Agreements giving counsel a lien to satisfy attorney fees out of funds or property awarded to the client (`charging lien') are commonplace."[6] Hogoboom & King, 2 Cal. Prac. Guide Family L., Ch.1-E, Attorney Fees and Costs Arrangement [hereinafter the "Family Law Practice Guide"], at ¶ 1:279. As a "practice pointer," the authors state that "In dissolution cases, attorneys routinely contract for a lien against the client's separate property and community property share awarded by the court or received in settlement." Id. at ¶ 1:285. The Family Law Practice Guide further states that the only limitation to a charging lien is that it cannot attach to funds owed as child support. Id. at ¶ 1:280.2.
Under California law, the attorney's charging lien is created by contract. California Civil Code § 2881 (liens can be created by (1) operation of law or (2) contract); Hansen v. Jacobsen, 186 Cal. App.3d 350, 355, 230 Cal.Rptr. 580 (1986) (equitable lien may be created by contract between the attorney and client). "[T]he California Supreme Court held that the intent of the parties determines the type of claim an attorney may assert against any fund generated due to his efforts. . . . if the parties intend that the attorney look directly to the settlement for payment, then a lien against that settlement is created in the attorney's favor." Alioto v. Official Creditor Comm. (In re Pacific Far East Line, Inc.), 654 F.2d 664, 668-69 (9th Cir. 1981) citing Isrin v. Superior Court, 63 Cal.2d 153, 157, 45 Cal.Rptr. 320, 403 P.2d 728 (1965).
Under California Law, the interpretation of a contract is a question of law. In re Bennett, 298 F.3d 1059, 1064 (9th Cir.2002). "The fundamental goal of [contract] interpretation is to give effect to the mutual intention of the parties. If contract language is clear and explicit, it governs.'" Id.; see also Cal.Civ.Code § 1636[7]. Charging liens are valid and *35 perfected upon execution of the contract creating the lien. See Carroll v. Interstate Brands Corp., 99 Cal.App.4th 1168, 1175, 121 Cal.Rptr.2d 532 (2002) ("An attorney's charging lien is created and takes effect at the time the fee agreement is executed.") citing Cetenko v. United Cal. Bank, 30 Cal.3d 528, 534, 179 Cal.Rptr. 902, 638 P.2d 1299 (1982).
Although initially the Court found Bouzas persuasive, upon receiving additional briefs from the parties and reexamining Bouzas, the Court declines to follow this case. Bouzas is not binding on this Court and apparently no other courts have adopted its holding.
Unlike other states that either have statutory attorney's liens or follow the common law regarding attorney's liens, California law provides that the attorney's charging lien can be created only by contract. The scope of the lien must therefore be determined by the language in the contract.
The Court finds that, as a matter of law, the broad language used in Paragraph 8.3 of Sutherland's retainer agreement creating her lien "on any funds or property due to or received by [the Debtor]" manifests the intent of both Sutherland and debtor to include real property or its proceeds awarded to debtor through the dissolution action as security for Sutherland's charging lien. To find otherwise would require family law attorneys to draft charging lien provisions with such specificity that would not only be cumbersome, but which would also require them to predict which funds or which property would be awarded to their clients through the dissolution proceeding. Such specificity appears not to be a requirement when examining form attorney lien provisions provided in various practice guides.[8]
Further, this Court could find no prohibition under California law that would prevent a family law attorney from taking an equitable interest in real property or its proceeds that are awarded to their clients in a dissolution action, through a contractual charging lien. Interestingly, it appears that the attorney's charging lien has its origins in cases involving real property.[9] *36 As pointed out above, the only apparent limitation is that the charging lien may not attach to funds owed as child support. The Family Law Practice Guide states that broad charging liens such as the one in this case are the preferred method for securing attorney fees regardless of the nature of the property.
`BOTTOM LINE' PRACTICE POINTER  Use Secured Liens Sparingly: As a practical matter, notwithstanding the ability to overcome ethical, procedural and substantive law hurdles., prudent counsel should reserve secured promissory note fee arrangements as a last resort option in marital cases. A § 2033 family law attorney's real property lien introduces further procedural complexities into the proceedings . . . it makes sense to limit attorney fee security arrangements to contractual charging liens."
Family Law Practice Guide at ¶ 1:302.
Another aspect of the attorney's lien is that the attorney must wait until the client obtains a "judgment" and then bring a "separate, independent action against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it." Carroll v. Interstate Brands Corp., 99 Cal.App.4th at 1173, 121 Cal. Rptr.2d 532. Given this background, the dicta in footnote 5 of Bouzas is unpersuasive. Notably, the Bouzas court did not include its analysis regarding California Family Code § 2033 in the body of its opinion nor can its comments in the footnote be considered a holding in the case. In sum, it does not appear to this Court that Family Code § 2033 precludes an attorney from taking an equitable lien in their client's real property or its proceeds especially when the attorney cannot even enforce the lien until the client is awarded the same.
Lastly, assuming paragraph 8.3 is ambiguous, the immediate post-contract conduct of the parties can serve to show how the parties originally understood the contract to operate. As the court stated in Southern Cal. Edison Co. v. Superior Court, 37 Cal.App.4th 839, 851, 44 Cal. Rptr.2d 227 (1995), "The rule is well settled that in construing the terms of a contract the construction given it by the *37 acts and conduct of the parties with knowledge of its terms, and before any controversy has arisen as to its meaning, is admissible on the issue of the parties' intent." In this case, the subsequent Stipulation Re Fees signed by debtor, his ex-wife, and the family court judge, Sutherland's service of the notice of Family Law Attorney's Real Property Lien, and the debtor's signing of the promissory note and Sutherland's recording of the All Inclusive Deed of Trust, demonstrate that Sutherland and debtor intended that she look to the proceeds from the sale of the real property to pay her fees.
Because the facts are undisputed, the Courts finds that Sutherland is entitled to summary judgment as a matter of law on the issue of whether her charging lien attached to the proceeds of debtor's real property.[10]
C. THE STIPULATION RE FEES: JUDICIAL LIEN
Sutherland contends that the Stipulation Re Fees, signed by the Family Court judge, is a judicial lien. The content of the Stipulation reveals that both debtor and his ex-wife acknowledged owing their respective attorneys fees and costs and each agreed that all attorney fees and costs due their respective attorney's would be taken directly out of each party's respective share of escrow. Initially, the Court notes that the stipulation contains no language that grants Sutherland a lien on the debtor's real property or its proceeds. Nonetheless, the trustee assumes Sutherland has a judicial lien, and argues that he can avoid that lien under § 544(a) because it is unperfected. Therefore, the Court assumes that Sutherland has a judicial lien for purposes of this discussion.
It is undisputed that Sutherland never recorded the Stipulation re Fees, thereby giving the trustee constructive notice of its contents. Sutherland has offered no authority that would excuse her from recording nor advanced any argument in response to the trustee.
The trustee seeks to avoid Sutherland's alleged judicial lien pursuant to his avoidance powers as a judicial lien creditor who obtains a judicial lien at the commencement of the case, and the rights and powers of a bona fide purchaser who has perfected its interest at the commencement of the case. See § 544(a)(1),(3). Since the transfer at issue involves either a security interest in debtor's real property or its proceeds, the rights of a judicial lien creditor or bona fide purchaser are defined by California law. Placer Savings and Loan Assoc. v. Walsh (In re Marino), 813 F.2d 1562, 1565 (9th Cir.1987) (citations omitted).
California law allows a judicial lien creditor and a bona fide purchaser to avoid a prior unperfected security interest:

*38 Every conveyance of real property . . . is void as against any subsequent purchaser or mortgagee of the same property . . . whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.
Cal.Civ.Code § 1214 (West 2006). Considered under this statute alone, a judicial Lien creditor and bona fide purchaser would be able to avoid debtor's transfer of the security interest in the real property to Sutherland.
The Court finds that, as a matter of law, the trustee as hypothetical lien creditor and bona fide purchaser under § 544(a)(1),(3) could not be charged with constructive notice of Sutherland's Stipulation which was not recorded as of the petition date. Although the trustee has not filed a cross motion for summary judgment, this Court may nevertheless grant summary judgment in his favor on this issue since there is no genuine issue as to any material fact. Cool Fuel, 685 F.2d at 311-42.
D. THE FLARPL LIEN
Pursuant to California Family Code § 2033(a), "[e]ither party may encumber his or her interest in community real property to pay reasonable attorney fees in order to retain or maintain legal counsel in a dissolution proceeding . . . and attaches only to the encumbering party's interest in the community real property." Under § 2033(b), the notice of the lien must be served personally on the other party (or his or her attorney of record) at least 15 days before recordation of the encumbrance.
1. ARGUMENTS OF THE PARTIES
Sutherland declares that her FLARPL lien was perfected when she recorded the. All Inclusive Deed of Trust.
The trustee argues that the only way for Sutherland to perfect her FLARPL lien is to have filed the Notice of Family Law Attorney's Real Property Lien that is required under California Family Law Code § 2033(b). The trustee maintains that filing the "All-Inclusive Deed of Trust and Assignment of Rents" was inadequate because on the face of the Deed of Trust there is no reference to the FLARPL. Therefore, according to the trustee, the FLARPL remains unperfected at the time of the filing of debtor's petition and is avoidable by the trustee under § 544(a)(1), (2) and (3).
2. ANALYSIS
It is undisputed that Sutherland did not record a Notice of Family Law Attorney's Real Property Lien. Rather, she filed the All Inclusive Deed of Trust and Assignment of Rents on September 27, 2005. The trustee frames the issue as whether the All Inclusive Deed of Trust is sufficient to "perfect" Sutherland's FLARPL as against the trustee as a lien creditor.
This Court need not decide what is the proper method to perfect a FLARPL lien under California law because it is the All Inclusive Deed of Trust that is before the Court and there is no dispute that it has been recorded giving constructive notice to the trustee regarding Sutherland's attorneys' fees. California Civil Code § 1213 titled "Record of conveyances; constructive notice, recording certified copies; effect" states in relevant part that "Every conveyance of real property . . . from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees. . . ." Thus, the trustee cannot use his avoiding powers under § 544(a) to invalidate the All Inclusive Deed of Trust.
*39 Even though there was no cross motion filed by the trustee on this issue and it was the trustee who raised this argument in his opposition, the Court finds there is no genuine issue of any material fact, and therefore sua sponte grants summary judgment in favor of Sutherland on this issue. Cool Fuel, 685 F.2d at 311-12.

III.

CONCLUSION
The Court finds that Sutherland has a valid charging lien on the proceeds from the sale of the real property for both her pre and post-petition fees. The Court further finds her alleged judicial lien is unperfected and subject to the trustee's avoidance powers. Lastly, the Court finds that Sutherland's filing of the All Inclusive Deed of Trust and Assignment of Rents was adequate to impart constructive notice to the trustee that she asserted an interest in the real property and its proceeds for her attorney fees.
This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Sutherland is directed to file with this Court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry thereof.
NOTES
[1] The Complaint alleges the following claims for relief: 1) avoidance of unperfected Family Law Attorney's Real Property Lien (the "FLARPL") pursuant to § 544(a)(1),(2), and (3); 2) avoidance of the FLARLP, if a statutory lien, pursuant to § 545(2); 3) avoidance of preferential transfer as to Deed of Trust pursuant to § 547(b); 4) avoidance of post-petition transfer as to Deed of Trust pursuant to § 549(a); 5) avoidance of claimed judicial lien pursuant to § 544(a); 6) avoidance of attorney's charging lien on subject property and sale proceeds pursuant to § 544(a)(1),(2) and (3).
[2] The Court did not make a ruling with respect to the trustee's third claim for relief, whether or not the All Inclusive Deed of Trust constituted a preference, since Sutherland's attorney contended at the hearing that there is a disputed issue of fact regarding the debtor's insolvency. Further, although Sutherland asserted the ordinary course of business defense in her initial motion, she did not provide any analysis for the Court to consider. [See Transcript dated July 7, 2006, 65:12-16].
[3] Sutherland's attorney, Mr. Parks, represented at the initial hearing on this matter that the previous claim of $27,110.90 encompassed future services. When Sutherland withdrew her representation the claim was amended. [see Transcript dated July 27, 2006, 31:1-18].
[4] The agreement stated: "Client grants . . . a lien on client's cause of action, judgment, settlement or otherwise, amount due or to be paid or that becomes due to client, for all unpaid fees, interest and for all costs. . . ."
[5] The Court stated:

The contract could have provided for a lien in the debtor's share of the community property. However, such a lien would not have constituted an attorney's charging lien. Therefore, it would not have been automatically perfected and entitled to priority based on the date of execution of the contract. It would also have been avoidable by the Trustee under 11 U.S.C. § 544(a) if unperfected. Moreover, as the Trustee noted, to the extent that Michell had obtained and perfected a lien on the Debtor's share of the Real Property to secure her fees in the dissolution action, the lien would have been void or voidable under California law unless she first complied with § 2033 of the California Family Code. . . .
[6] The trustee argues in his supplemental brief that "The attorney's charging lien is typically used in tort-based cases taken on a contingency fee basis, not in marital dissolution actions where real property is likely to be part of a judgment." The Family Law Practice Guide, however, appears to contradict the trustee's statement.
[7] CONTRACTS, HOW TO BE INTERPRETED.

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.
[8] The Family Law Practice Guide, Form 1:G.1 entitled Attorney Fees and Costs Agreement, ¶ 8 suggests using the following language to create the attorney's lien in a fee agreement:

Attorney Lien: I shall have a lien upon any money or property awarded or payable to you in this proceeding, whether by judgment, settlement or otherwise, as security for the payment of fees and costs due me under this Agreement. This lien could delay payments to you or receipt by you of some or all of the money or product you may be awarded in this proceeding as a result of my legal services until any fees/ costs billing disputes are resolved.
In the California Practice Guide for Professional Responsibility, the authors provide the following form language to create an attorney's lien in a fee agreement:
You hereby grant us a lien as security for the payment of fees and costs due and owing to us under this agreement. This lien will attach to .......... (any recovery you may obtain, whether by arbitration award, judgment, settlement or otherwise, in this matter; or the property that is the subject of this transaction). . . .
Vapnek, Tuft, 5 California Practice Guide: Professional Responsibility, Form 5:EE (2006).
In 1B Am.Jur. Legal Forms 2d Alimony and Separation Agreements § 17:5 (2006), the attorney lien provision is slightly more comprehensive:
The attorney shall have the right to place a lien on any and all of the client's real or personal property, or money, whether separate or community property, for the payment of any fees or costs outstanding.
[9] The Isrin court provides a short history regarding the recognition of an attorney's lien in California. The court noted that some California courts did not recognize the common-law charging lien of an attorney for his fee while other courts did. 63 Cal.2d at 157, 45 Cal.Rptr. 320, 403 P.2d 728 (citations omitted). In recognizing the attorney's lien, the court noted:

As Professor Radin has remarked (28 Cal. L.Rev. at p. 597, fn. 26), `How these cases are to be reconciled to the doctrine that there is no lien for the attorney in California is not quite clear.' An answer may lie in the fact that typically these were suits to establish an interest in real property, and the plaintiff had agreed by contract to convey to his attorney, as compensation for the latter's services in conducting the litigation, a certain percentage of whatever land might be recovered. Analogizing to the settled rule of equity in suits on a contract for the sale of land, the courts held that upon execution of the contingent fee contract the attorney, like a vendee, immediately acquired equitable title to his share of the land and that such interest would be protected, if necessary, by the imposition of a constructive trust. While the analogy is not free from doubt, the holdings of these early land cases have been extended in more recent times to personal injury actions, with little apparent concern for niceties of definition. . . .
The Court concluded that "For our present purposes, however, we need not attempt resolution of such conflicts in the law of attorney's liens. It will be enough to observe that in whatever terms one characterizes an attorney's lien under a contingent fee contract, it is no more than a security interest in the proceeds of the litigation." Id. (citations omitted).
[10] In his supplemental brief, the trustee argued that the Sutherland's charging lien does not cover her fees incurred during the post-petition period because her retainer agreement is an executory contract that was rejected as a matter of law. The trustee therefore concludes, without analysis, that "even if [Sutherland] had a valid, perfected attorney's charging lien, the lien did not secure the fees and costs incurred during the post-petition period." The trustee relies on Pacific Far East, 654 F.2d at 664. Sutherland has not responded to this argument. Nonetheless, the Court finds that the trustee's argument regarding the executory nature of Sutherland's retainer agreement misplaced. 11 U.S.C. § 365 permits a trustee to assume those executory contracts which benefit the estate and reject those which do not. Assumption or rejection of Sutherland's retainer agreement has no effect on the estate because the proceeds generated from the sale of debtor's real property are exempt, unless the trustee can use his avoidance powers to set aside Sutherland's lien.