Filed 3/13/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| JEFFREY L. JACOBS, | C100761 |
| Plaintiff and Appellant, | (Super. Ct. No. 22CV0891) |
| v. | |
| THOMAS M. PAPEZ, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Leanne K. Mayberry, Judge. Reversed.

Jeffrey L. Jacobs, in pro. per., for Plaintiff and Appellant.

Thomas M. Papez, in pro. per., for Defendant and Respondent.

Appellant Jeffrey Jacobs and respondent Thomas Papez are attorneys who each, at separate times, represented two plaintiffs in a personal injury action. Both attorneys were retained under written contingency fee agreements entitling them to a percentage of the

1

plaintiffs' recovery. After Jacobs settled the personal injury action, he and Papez could not agree on the amounts owed to them under their respective attorney liens on the settlement proceeds. To resolve the dispute, Jacobs filed a declaratory relief action against both Papez and the clients, seeking a determination of all parties' respective rights. The trial court dismissed Jacobs's action against Papez on the ground that Papez was entitled to have the validity and amount of his attorney lien determined first in a separate action, before Jacobs could have the validity and amount of his lien determined. We conclude the trial court erred in dismissing the action and therefore reverse and remand for further proceedings.

BACKGROUND

I.

This appeal stems from competing claims for fees by three attorneys or law firms who successively represented clients Brian and Diane Friedland in their dispute with a driver who injured Mr. Friedland in a car accident. We take the facts from the complaint's allegations and attached exhibits.

Each of the three attorneys or firms represented the Friedlands on a contingency fee basis under a written retainer agreement. The first firm, which is not a party to this case, represented the Friedlands for about 18 months, without filing any litigation. In 2019, the Friedlands signed contingency fee agreements to retain a new attorney, defendant Papez. The fee agreements specified that Papez would receive 40 percent of any recovery he obtained for the Friedlands after the filing of an action. The agreements further provided that Papez would have a lien for attorneys' fees and costs against the proceeds of any recovery obtained.

In July 2019, after unsuccessful efforts at mediation, Papez filed a personal injury action on behalf of the Friedlands against the driver. Later that month, the Friedlands and Papez terminated the representation. The day before he formally withdrew from the case, Papez filed a notice of attorney lien for $60,000 in the personal injury suit.

2

The Friedlands represented themselves for a time and then retained plaintiff Jacobs in September 2020.  The Friedlands signed a contingency fee agreement providing that Jacobs would receive 40 percent of any recovery received after the filing of an action.  The agreement also specified that Jacobs "shall have a first lien for services rendered and expenses and costs advanced on any sums recovered" on the Friedlands' claims.  Jacobs litigated the matter until August 2021, when he negotiated a settlement of $200,000 against the driver.

The driver's insurance company withheld payment of some $67,000 of the settlement funds pending resolution of the various attorney lien claims.  In September 2021, the insurer informed the first law firm and Papez of the settlement and the amount being withheld for attorneys' fees.  The first law firm agreed to receive $5,000, and the insurer paid the firm that amount from the withheld funds.  This left a balance of about $62,000 in withheld settlement funds to which both Papez and Jacobs claimed entitlement under their respective fee agreements.

## II.

In June 2022, Jacobs filed the instant declaratory relief action against Papez, the Friedlands, and various Doe defendants, seeking a declaration of the parties' respective rights to the settlement proceeds being withheld by the driver's insurer.  Jacobs's complaint alleged that Papez was not entitled either to his contractual contingent fee (because his representation ended before any recovery was obtained) or to compensation for services rendered (because he, in Jacobs's view, had voluntarily withdrawn from the representation without just cause).

Papez answered and moved to dismiss.  As relevant here, Papez's motion argued that the trial court lacked subject matter jurisdiction to hear the case because Jacobs was required to first establish the existence, amount, and enforceability of his lien in an independent action against only the Friedlands, rather than suing both Papez and the Friedlands in the same suit.

3

The Friedlands failed to answer Jacobs's complaint, and the trial court entered a default against them.

The trial court issued a tentative ruling denying Papez's motion to dismiss. The court determined that Jacobs had permissibly filed his declaratory relief action against Papez and the Friedlands, reasoning that the suit complied with the rule that attorney lien claims must be litigated in an action separate from the underlying litigation in which the attorney represented his or her client.

After full briefing and a hearing, the trial court revisited its tentative conclusion and granted Papez's motion in a written ruling. The court discussed the general rule of priority set forth in Civil Code section 2897 that, "[o]ther things being equal, different liens upon the same property have priority according to the time of their creation . . . ." It observed that Papez's lien was senior to Jacobs's lien because Papez's attached at the time he and the Friedlands executed their contingency fee agreements, well before Jacobs's retention. The court then rejected Jacobs's arguments that his declaratory relief action (1) was a proper vehicle for settling both attorneys' lien claims and (2) stood in place for an interpleader action. The court found that Jacobs was not the proper party to bring an interpleader action because he was not holding the disputed funds. The court further found it procedurally improper for Jacobs to sue Papez in a declaratory relief action to resolve the issue of their attorney liens. Rather, the court held, Papez was "entitled to have the validity and amount of his lien determined first in a separate action, prior to Jacobs having the validity and amount of his lien determined." The court thus dismissed the complaint as against Papez.

At the hearing on the motion to dismiss, the trial court also denied without prejudice Mr. Friedland's motion to set aside the default.

4

Jacobs filed a timely notice of appeal from the dismissal order.[1]

DISCUSSION

I.

California courts have long recognized liens in favor of an attorney on the proceeds of a prospective judgment awarded to the attorney's client. (*Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531.) "Such a lien may be created either by express contract . . . [citations], or it may be implied if the retainer agreement between the lawyer and client indicates that the former is to look to the judgment for payment of his [or her] fee [citations]." (*Ibid.*; see *Mojtahedi v. Vargas* (2014) 228 Cal.App.4th 974, 977 (*Mojtahedi*).) "[T]he lien survives the discharge of the attorney, and the attorney, although no longer entitled to the fees contracted for, remains entitled to recover from the judgment the reasonable value of services actually performed." (*Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1172, fn. 3 (*Carroll*).) The priority of an attorney's lien is generally determined by the date of execution of the originating attorney fee contract. (*Cetenko*, at p. 534; *Carroll*, at p. 1175; see Civ. Code, § 2897 ["Other things being equal, different liens upon the same property have priority according to the time of their creation . . ."].)

---

[1] The record contains no judgment of dismissal, and the dismissal order did not resolve the case as to the Friedlands. Because there is no question that the dismissal order finally resolved the action as to Papez, however, we construe the order as an appealable final judgment on Jacobs's claims against Papez. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 759 [discussing "settled rule that orders amounting to de facto judgments as to some but not all parties could be treated as final judgments"]; *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 436-437 [finding appellate jurisdiction where judgment was final as between appellants-defendants and the plaintiff, despite claims still pending against other defendants]; *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1589-1590 & fn. 4 [order sustaining demurrer as to one of many defendants construed as an appealable order dismissing the case as to that defendant].)

An attorney's lien is only enforceable after the attorney adjudicates the validity and amount of the lien. (*Mojtahedi*, *supra*, 228 Cal.App.4th at p. 978.) If any party objects, this adjudication cannot occur in the underlying action in which the attorney is or was representing the client. (*Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 332-333 (*Brown*); *Carroll*, *supra*, 99 Cal.App.4th at p. 1173.) That is because of the "fundamental rule" that, "[a]bsent proper intervention," an attorney "is not a party to the client's action and cannot appear on his or her own behalf to seek any relief in that action, including enforcement of a contractual lien against the proceeds of the judgment." (*Brown*, at p. 330.) Instead, the longstanding rule is that, "[a]fter the client obtains a judgment, the attorney must bring a separate, independent action against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it." (*Carroll*, at p. 1173.)

A trial court's " 'decision to entertain an action for declaratory relief is reviewable for abuse of discretion.' " (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647; see Code Civ. Proc., §§ 1060, 1061.) "This discretion is not boundless," however. (*Meyer*, at p. 647.) " 'Where . . . a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction . . . .' " (*Ibid.*)

II.

There is no dispute in this appeal that Jacobs's action was separate and independent from the Friedlands' personal injury case against the driver. (See *Brown*, *supra*, 116 Cal.App.4th at pp. 332-333; *Carroll*, *supra*, 99 Cal.App.4th at p. 1173.) The question is whether this particular type of separate action—a declaratory relief suit against both the Friedlands and Papez—was a proper way for Jacobs to seek to enforce his attorney lien. We conclude that it was.

6

In *Brown*, we considered the means by which an attorney lien claimant could assert his lien as against the competing lien of a judgment creditor. (*Brown*, *supra*, 116 Cal.App.4th at pp. 328-334.) There, after obtaining a judgment for his corporate client in a licensing dispute, an attorney sought—in that same action—to establish the priority of his purported contractual lien on the judgment proceeds, over a creditor's claimed judgment lien. (*Id.* at pp. 324-325.) We held that the trial court correctly denied the attorney's motion to adjudicate his lien's amount and priority, given that he was not a party to the action and another party had objected. (*Id.* at pp. 332-333; see *ibid.* [judgment creditor deemed to be party for purposes of application under judgment lien statutes].) If the attorney wished to establish and enforce his lien on the proceeds of the judgment, we said, he had to "bring a separate action to do so." (*Id.* at p. 333 [discussing "the fundamental rule set forth in *Carroll* and its predecessors"].)

We then addressed the attorney's concern that bringing a separate action against his client would be improper given that there was no dispute between attorney and client as to the fees owed. (*Brown*, *supra*, 116 Cal.App.4th at pp. 333-334.) We explained that the attorney's separate action to enforce his lien did not have to be a suit for breach of contract against the client. (*Ibid.*) Instead, we observed that it would be "appropriate" for the attorney to institute a declaratory relief action against the judgment lien holder under Code of Civil Procedure section 1060 in which the attorney might seek a declaration of his rights with respect to the judgment lien holder or with respect to the proceeds of the judgment. (*Brown*, at p. 333.) We contemplated that the attorney might name his client as a defendant in such an action as well, although the client would not necessarily have to appear. (*Ibid.*) In this sort of action, the attorney and competing lien holder could "litigate the validity, amount, and priority of [the attorney]'s lien," and the attorney could "enforce that lien in the declaratory relief action." (*Id.* at pp. 333-334.) That is the course Jacobs took here: after obtaining a settlement for his clients, he instituted a separate declaratory relief action against the Friedlands and the competing

7

lien claimant, Papez, seeking "a judicial declaration of the respective rights . . . of the parties" to the settlement proceeds. And while *Brown* involved a judgment lien holder and an attorney lien claimant, we see no reason why its rationale would not also extend to cases where the two competing lien claimants are both attorneys.

To the extent the trial court concluded that an attorney must proceed only against his or her client first, we disagree. It is true that courts have disapproved actions only between lien claimants. For example, in *Mojtahedi*, the Court of Appeal held that an attorney could not sue only the competing attorney lien claimant without having first sued his former clients to establish the amount or enforceability of his lien. (*Mojtahedi*, *supra*, 228 Cal.App.4th at pp. 976-978.) That is because "enforcement of an attorney's lien claim is a matter of contract between the attorney and client, and thus it must be resolved as between those contracting parties." (*Aresh v. Marin-Morales* (2023) 92 Cal.App.5th 296, 304.) But here, unlike the attorney-plaintiff in *Mojtahedi*, Jacobs brought his suit simultaneously against both Papez, the competing lien claimant, *and* the clients, the Friedlands—a situation that *Mojtahedi* had no occasion to address. (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 495-496 [*Mojtahedi*'s "reasoning focused on the significance of the plaintiff's choice *not* to name his former clients as a party" (italics added)]; *Aresh*, at p. 301, fn. 3 ["issue of simultaneous litigation" against both former client and competing lien claimant "was never raised in *Mojtahedi*"].) With the Friedlands included in the suit, the trial court could resolve the validity and amount of Jacobs's attorney lien claim. (*Aresh*, at p. 301, fn. 3 [inclusion of clients as named parties gave them adequate "opportunity to be heard" on attorney's claim to share of their settlement proceeds].)

We see no reason, moreover, why Jacobs could not name Papez as an additional defendant in seeking resolution of the validity, amount, and priority of his lien. In *Southern California Gas Co. v. Flannery*, *supra*, 5 Cal.App.5th at pages 495-496, the Court of Appeal approved such a joint action in an analogous context. There, an attorney

8

asserted his lien claim in an answer and motion for attorneys' fees in an interpleader action naming (among others) the attorney, his former client, and a successor attorney as defendants and claimants. (*Id.* at pp. 480-482, 496.) The court rejected the argument that, because the attorney had not established the existence and amount of his lien in an independent action, the attorney lien claim could not be adjudicated in the interpleader action. (*Id.* at pp. 494, 496.) Likewise here, Jacobs's declaratory relief action against both Papez and the Friedlands allowed for the simultaneous resolution of all parties' claims to the disputed settlement funds, without the need for each attorney to individually sue the clients first. (See *ibid.*)

We also see no reason why Jacobs had to wait for Papez, the asserted senior lien holder, to first obtain a judicial determination as to the validity and amount of Papez's own lien, as the trial court concluded. The trial court was correct that priority generally goes to the first-created lien, "[o]ther things being equal." (Civ. Code, § 2897; *Cetenko v. United California Bank*, *supra*, 30 Cal.3d at p. 534.) But other things are not always equal. (See *Del Conte Masonry Co. v. Lewis* (1971) 16 Cal.App.3d 678, 681 [party who was first to assert claim had priority over earlier-created liens].) Moreover, and more fundamentally, the issue of lien priority is precisely what must be determined as part of an adjudication of competing lien claims—it does not dictate the sequence of adjudication before the fact. Indeed, such a rule would risk allowing the first-retained attorney to indefinitely impede resolution of the disputed portion of a settlement procured through the efforts of a subsequent attorney. (See *Brown*, *supra*, 116 Cal.App.4th at p. 335 [attorney lien claimant cannot "hold the . . . judgment hostage indefinitely against [a creditor's] judgment lien by deferring, without good cause, a separate action on his lien claim"].) And while we said in *Brown* that it might constitute an abuse of discretion to order the satisfaction of a later-created lien without giving an attorney with an apparently senior lien "a fair opportunity to first litigate the validity of his lien claim in a separate action" (*ibid.*), there is little risk of that with the action at issue here. By bringing a

9

declaratory relief action simultaneously against both the Friedlands and Papez, Jacobs did not deprive Papez of the opportunity to litigate his own lien claim against the clients. To the contrary, Papez had the opportunity to assert the validity, amount, and priority of his own lien against the settlement proceeds in that same action.

In sum, we hold that bringing a single action for declaratory relief against both the clients and a competing attorney lien claimant is a permissible way for an attorney to enforce an attorney lien claim on the proceeds of a settlement or judgment. Contrary to the trial court's view, the attorney who obtains a recovery for his or her clients need not wait for the clients' former attorney to first bring an individual separate action against the clients.

DISPOSITION

The judgment of dismissal is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion. Jacobs shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)[2]


_____/s/_____
FEINBERG, J.



We concur:



_____/s/_____
EARL, P. J.



_____/s/_____
RENNER, J.

---

[2] We deny Jacobs's request for judicial notice of several court filings from two related cases, as the filings are not relevant to our resolution of this appeal. (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 266 [judicial notice generally not taken of matters irrelevant to dispositive points on appeal].)