Filed: 4/28/2015

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

MARK S. NOVAK,

     Petitioner and Appellant,

v.

MICHAEL FAY, as Trustee, etc.,

     Objector and Respondent.

B256889

(Los Angeles County
Super. Ct. No. LP013320)

---

     APPEAL, from an order of the Superior Court of Los Angeles County, Roy L. Paul, Judge. Reversed with directions.

     Greines, Martin, Stein & Richland, Robin Meadow and David E. Hackett, for Plaintiff and Appellant.

     Susan Stricklin Wilson and Barbara K. Meserve, for Defendant and Respondent.

# I. INTRODUCTION

Plaintiff, Mark S. Novak, seeks to enforce an attorney fee lien on assets held by the Dana Teitler Trust dated August 20, 1999 (Dana Teitler Trust). The present petition to enforce the attorney fee lien arises out of plaintiff's representation of Douglas Kelly between 2007 and 2012. In 2007, plaintiff and Mr. Kelly executed a contingency attorney fee agreement. The contingency fee agreement granted plaintiff lien rights over any settlement Mr. Kelly received. Under the terms of the fee agreement, plaintiff was to represent Mr. Kelly. In 2011, plaintiff filed a probate petition which alleged Mr. Kelly was a pretermitted spouse of Ms. Teitler. In 2011, plaintiff negotiated a considerable settlement of the probate dispute. The probate court approved the settlement which awarded Mr. Kelly a substantial interest in the Dana Teitler Trust in an order filed January 27, 2012.

Mr. Kelly died. On June 20, 2013, plaintiff filed the present petition. Plaintiff's petition seeks to enforce the attorney lien in the 2007 fee agreement with Mr. Kelly. The probate court denied plaintiff's petition to enforce the lien against property held by the Dana Teitler Trust. Plaintiff appeals from the probate court's December 16, 2013 order denying his petition to enforce his attorney fee lien. We reverse.

# II. BACKGROUND

## A. Mr. Kelly's Petition for Distribution of Property From the Trust

Ms. Teitler is a named beneficiary of the Teitler Family Trust. In 1999, Ms. Teitler transferred her beneficiary rights in the Teitler Family Trust to herself as trustee of the Dana Teitler Trust. Ms. Teitler named herself as a life beneficiary of the Dana Teitler Trust. Ms. Teitler's daughter, Abigail Fay, is named in the Dana Teitler Trust as the remainder beneficiary. Mr. Kelly was formerly married to Ms. Teitler from July 10,

2002, until her death on October 15, 2006. Defendant is Michael Fay, Ms. Fay's father and the successor trustee of the Dana Teitler Trust.

On May 16, 2011, Mr. Kelly, represented by plaintiff, filed a petition for distribution of property from the Dana Teitler Trust. Mr. Kelly argued he was a pretermitted spouse and sought a one-half share of the Dana Teitler Trust. Prior to filing the pretermitted spouse probate petition, Mr. Kelly and plaintiff entered into a contingency fee agreement. The contingency fee agreement provides, "[Mr. Kelly] agrees to pay [plaintiff] 40% of all recoveries by way of settlement . . . . 'Recovery' includes, but is not limited to, all distributions to [Ms. Teitler's] estate from the Teitler Family Trust, i.e. distribution to which [Mr. Kelly] is entitled to 50% as [Ms. Teitler's] spouse." Mr. Kelly agreed to reimburse plaintiff for any advanced legal costs and expenses incurred during the pretermitted spouse probate proceedings. The contingency fee agreement further provides: "It is agreed that Attorney may retain his share in full out of the amount finally collected by settlement; and it is further agreed that Attorney shall have all general, possessory, or retaining liens, and all special or charging liens known to the common law. [Mr. Kelly] expressly assigns to Attorney to the extent of his fees and disbursements, all assets and sums realized by way of settlement, arbitration, or trial."

On October 11, 2011, a settlement of Mr. Kelly's pretermitted spouse probate petition was entered into with defendant. In entering into the settlement, defendant was acting both as the guardian of Ms. Fay's estate as well as the successor trustee of the Dana Teitler Trust. Under specified circumstances, the settlement contemplated a monthly $3,500 payment to Mr. Kelly. And, Mr. Kelly was entitled to receive 40 percent of all assets to which Ms. Teitler would have been entitled to as a beneficiary of the Teitler Family Trust. The settlement also contained the following proviso regarding distribution of Mr. Kelly's beneficial interest upon his death: "Upon [Mr. Kelly's] death all income and principal of [the Dana Teitler Trust] that have been distributed to him may be disposed of by [Mr. Kelly], by Will, Trust, or gift(s), as he chooses. As to any assets of [the Dana Teitler Trust] in which [Mr. Kelly] has a beneficial interest which have not been distributed to [Mr. Kelly], [Ms. Fay] . . . shall receive fifty percent (50%) of [Mr.

3

Kelly's] beneficial interest therein.  As to [Mr. Kelly's] other fifty percent (50%) beneficial interest in said undistributed assets, [Mr. Kelly] shall have the right to dispose of them by Will, Trust, or gift(s), except that if [Mr. Kelly] does not so dispose of them, said other fifty percent (50%) interest as to such undisposed assets shall also be received by [Ms. Fay] and, in such case, shall be deemed assigned to [Ms. Fay]."

B.  Plaintiff's Petition to Enforce His Attorney's Fee Claim

On January 6, 2012, plaintiff filed an attorney fee lien notice with the Dana Teitler Trust and defendant.  Plaintiff waived his right to any portion of the $3,500 monthly distribution to Mr. Kelly.  Mr. Kelly died on July 24, 2012.  He made no will, trust or any gifts.

On June 20, 2013, plaintiff filed a petition entitled, "Petition to Enforce Claim Pursuant to Attorney's Fee Agreement to Real and Personal Property Held by Trustee; and To Remove Trustee for Conflict of Interest, Failure to Report, and Conversion of Petitioner's Funds."  Plaintiff alleges he has standing to pursue his lien rights in probate court on two theories.  Initially, plaintiff alleges he has standing because he is a beneficiary of the Dana Teitler Trust as a successor in interest under Probate Code section 24.[1]  Also, plaintiff alleges he is a person entitled to take an interest under section 262.

According to the petition, plaintiff and Mr. Kelly entered into a contingency fee agreement.  If successful, plaintiff was entitled to receive as a contingent attorney fee 40 percent of Mr. Kelly's 40 percent interest in the Dana Teitler Trust.  According to the petition, Mr. Kelly's assignment of a portion of his beneficial interest in the Dana Teitler Trust is a nonprobate transfer under section 5000, subdivision (a).  Plaintiff filed a second supplement to his petition which expanded on his section 5000, subdivision (a) argument.  According to the supplement, Mr. Kelly made a nonprobate transfer of his estate to Ms.

---

[1]  Further statutory references are to the Probate Code unless otherwise indicated.

4

Fay under section 5000, subdivision (a). Plaintiff asserts Mr. Kelly died without assets. Thus, no probate of Mr. Kelly's estate was ever opened. Plaintiff argues the nonprobate transfer rendered a creditor claim to open a probate action against Mr. Kelly's estate pointless.

Defendant filed his opposition on July 25, 2013. Defendant argues plaintiff lacked standing to bring a petition regarding the Dana Teitler Trust. According to the opposition: plaintiff was not a beneficiary; the contingency fee agreement did not create a lien on any trust assets; all of Mr. Kelly's interest in the Dana Teitler Trust ceased to exist upon his death when he failed to dispose of it via will, trust or gift; plaintiff is a creditor of Mr. Kelly; plaintiff should have pursued a creditor's claim against Mr. Kelly's estate under section 9000; and plaintiff's petition is time-barred under Code of Civil Procedure section 366.2, subdivision (a). Code of Civil Procedure section 366.2, subdivision (a) provides that an action arising "in contract" against a person who dies must be commenced within one year of death.

### C. Events Leading Up to the Order Denying Plaintiff's Petition

On July 31, 2013, the hearing was held on plaintiff's June 20, 2013 petition to enforce the fee agreement. The probate court orally indicated that it was unpersuaded by plaintiff's argument premised upon section 5000, subdivision (a). But no order was issued taking plaintiff's petition under submission. Several months passed and the probate court had issued no written order in connection with the merits. Each party had submitted a proposed order in response to the probate court's June 20, 2013 comments. On December 2, 2013, the probate court issued the following order: "The [c]ourt has received two conflicting orders to sign after a hearing heard in this department on July 31, 2013. The [c]ourt has received no indication of the reasons in support of their proposed order[s], nor reasons for opposition of the proposed orders submitted. [¶] The [c]ourt hereby orders each counsel, to submit a brief argument in support of, or opposition to any proposed order, to be filed . . . no later than December 13, 2013."

5

Plaintiff filed a letter on December 12, 2013, which specifically relies upon section 9391. We will discuss section 9391 in greater depth later in this opinion.

On December 16, 2013, the probate court issued a written order denying plaintiff's petition. The probate court ruled: the proper procedure to recover attorney's fees was pursuant to a creditor's claim against Mr. Kelly's estate under section 9000; plaintiff was required to file a creditor's claim within one year of Mr. Kelly's death; the California Code of Civil Procedure section 366.2, subdivision (a) statute of limitations barred plaintiff's claim; and section 5000, subdivision (a), which provides a nonprobate transfer, was inapplicable. Plaintiff appeals the December 16, 2013 order denying his petition.

### III. DISCUSSION

#### A. Summary of Arguments and Standards of Review

Plaintiff raises two arguments on appeal. Plaintiff first argues under section 9391, he is an equitable lienholder and did not need to file a creditor's claim in probate. Plaintiff alternatively argues Mr. Kelly made a nonprobate transfer of a beneficial interest. Defendant disagrees on both points and asserts that the section 9391 equitable lienholder contention has been forfeited. Insofar as we are analyzing statutory interpretation issues, we conduct de novo. (*Estate of Wilson* (2012) 211 Cal.App.4th 1284, 1290; *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.) As to an examination of contractual issues, we engage in de novo review when a contract's meaning may be determined without reference to extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866; *Estate of Wilson*, *supra*, 211 Cal.App.4th at p. 1290.)

#### B. Forfeiture

Defendant contends plaintiff failed to properly raise the section 9391 issue in the probate court. As noted, the probate court orally indicated that it was unpersuaded by

6

plaintiff's section 5000, subdivision (a) argument. After receiving conflicting proposed written orders, the probate court allowed the parties to present further briefing in support of their positions. Plaintiff then explicitly argued that section 9391 applied. The probate court then issued an order denying plaintiff's attorney fee petition. According to defendant, plaintiff was required to file a reconsideration motion pursuant to Code of Civil Procedure section 1008, subdivision (a) in order to preserve the section 9391 contention. We disagree.

Code of Civil Procedure section 1008, subdivision (g) limits a party's right to seek reconsideration after a motion is denied. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1098; *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 768.) Code of Civil Procedure section 1008, subdivision (a) requires a reconsideration motion be filed within 10 days of service of "notice of entry" of the order sought to be reconsidered. (*Forrest v. Department of Corrections* (2007) 150 Cal.App.4th 183, 202-203, disapproved on another point in *Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1173; *Advanced Building Maintenance v. State Comp. Ins. Fund* (1996) 49 Cal.App.4th 1388, 1392.) Here, there was a disagreement about the appropriate written order and the probate court directed further briefing occur. No notice of entry of any order made at the July 31, 2013 hearing was ever served on plaintiff. Thus, the 10-day requirement imposed by Code of Civil Procedure section 1008, subdivision (a) is inapplicable. (*Forrest v. Department of Corrections, supra*, 150 Cal.App.4th at p. 203; see *Glaser, Weil, Fink, Jacobs & Shapiro, LLP v. Goff* (2011) 194 Cal.App.4th 423, 445 ["In general, a party aggrieved by a ruling need not seek reconsideration in order to preserve the issue for later review—advocating an opposing position *before* the ruling is sufficient."]; *Wilson v. Science Applications Internat. Corp. (*1997) 52 Cal.App.4th 1025, 1032, fn. 3 ["[T]he 10-day period begins running when the moving party has been served with the order."].) For the foregoing reasons, plaintiff was not required to file a reconsideration motion. The section 9391 issue has been preserved.

7

## C. Plaintiff's Lien Rights

In California, attorney's liens are generally created by contract. (*Fletcher v. Davis* (2004) 33 Cal.4th 61, 66; *Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1172.) Our Supreme Court has described an attorney's charging lien thusly: "'"A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act.' (Civ. Code, § 2872.) An attorney's lien 'upon the fund or judgment which he has recovered for his compensation as attorney in recovering the fund or judgment . . . is denominated a "charging lien."'" (*Goodrich v. McDonald* (1889) 19 N.E. 649, 651.) A charging lien may be used to secure either an hourly fee or a contingency fee. (*Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531-532.)" (*Fletcher v. Davis*, *supra*, 33 Cal.4th at p. 66.) An attorney's lien may be created upon execution of the retainer agreement. (*Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 293; *Cappa v. F & K Rock & Sand, Inc.* (1988) 203 Cal.App.3d 172, 174-175.) An attorney's charging lien creates a security interest in the litigation's proceeds; in this case the settlement resulting from the filing of Mr. Kelly's pretermitted spouse probate petition. (*Fletcher v. Davis*, *supra*, 33 Cal.4th at p. 67; *Isrin v. Superior Court* (1965) 63 Cal.2d 153, 158.) When an attorney's lien is tied to the client's contingent recovery, the lawyer cannot enforce it until the contingency (settlement and probate court approval in our case) occurs. (*Kroff v. Larson* (1985) 167 Cal.App.3d 857, 861 ["[T]he obligation to reimburse the attorney for costs advanced, matures, if at all, only upon the occurrence of the agreed contingency, i.e. recovery by the client."]; see *Bibend v. L. & L. F. & L. Ins. Co.* (1866) 30 Cal. 78, 86 [the obligation "attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto. . . ."].)

And, as soon as Mr. Kelly's beneficial interest in Dana Teitler Trust came into being (upon the 2011 settlement and 2012 probate court approval), plaintiff's lien attached to it. Civil Code section 2883 states, "An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in

8

existence.  In that case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing, to the extent of such interest."  The reference to "property not yet acquired" is applicable here.  When the contingency fee agreement was executed, Mr. Kelly had no legally enforceable interest in the Dana Teitler Trust.  Pursuant to Civil Code section 2883, a lien may embrace an asset which is not then in existence which is referred to in California decisional authority as after-acquired property.  (*Kreling v. Kreling* (1897) 118 Cal. 413, 419 [citing Civ. Code, § 2883, a lien "was not rendered ineffectual by the fact that the appellant had not yet acquired the property"]; *Carter v. Metzdorf Associates* (1963) 217 Cal.App.2d 812, 821 ["The lease, by its terms, created an equitable lien which attached to each item of furniture or equipment as it was subsequently acquired and installed in the motel."].)  And plaintiff's lien attached once Mr. Kelley secured his rights to a portion of the Dana Teitler Trust pursuant to the 2011 settlement agreement and 2012 probate court order.  (Civ. Code, § 2883; *Kroff v. Larson*, *supra*, 167 Cal.App.3d at p. 861; see *Bank of California v. McCoy* (1937) 23 Cal.App.2d 192, 198.)

With this background in mind, we turn to section 9391 which provides in part: "[T]he holder of a mortgage or other lien on property in the decedent's estate . . . may commence an action to enforce the lien against the property that is subject to the lien, without first filing a claim as provided in this part, if in the complaint the holder of the lien expressly waives all recourse against other property in the estate.  Section 366.2 of the Code of Civil Procedure does not apply to an action under this section."  The principal effects of section 9391 are:  to permit a lienholder, such as plaintiff, to pursue a lien claim in probate court against the personal representative of an estate without filing an independent action to foreclose on the lien (see *Corporation of America v. Marks* (1937) 10 Cal.2d 218, 220-221; *Hibernia etc. Soc. v. Wackenreuder* (1893) 99 Cal. 503, 508); to do so without filing a probate claim (14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 632, pp. 717-718; *Schwartz v. Edmunds* (1937) 20 Cal.App.2d 530, 533); and the Code of Civil Procedure section 366.26, subdivision (a) statute of limitations is inapplicable to a lien holder's petition.  (*Bradley v. Breen* (1999) 73

9

Cal.App.4th 798, 803; Ross, Cal. Practice Guide: Probate (The Rutter Group 2014) ¶ 8:34, p. 8-24 (rev. # 1, 2013).) Our Supreme Court has characterized the "lien" language in a predecessor provision of section 9391, former section 716,[2] as broad. (See *Corporation of America v. Marks*, *supra*, 10 Cal.2d at p. 221; *Liuzza v. Bell* (1940) 40 Cal.App.2nd 417, 432.) Also, our Supreme Court in 1893 described a predecessor provision of section 9391, former Code of Civil Procedure section 1500,[3] as a remedial statute. (*Hibernia etc. Soc. v. Wackenreuder*, *supra*, 99 Cal. at p. 508.) By 1893, as now, our Supreme Court had held that a remedial statute must be liberally construed in favor of the specified remedy. (*Buck v. City of Eureka* (1893) 97 Cal. 135, 137-138; *Cullerton v. Mead* (1863) 22 Cal. 96, 98.) Thus, we conclude there was no requirement that plaintiff file a creditor's claim nor did the section 366.2, subdivision (a) statute of limitations require his attorney fee petition be denied.

We now address several of defendant's arguments. Defendant contends that Mr. Kelly did not *realize* any assets from the Dana Teitler Trust, other than the $3,500 monthly distribution. As noted, plaintiff and Mr. Kelly entered into a contingency fee agreement which states: "[Mr. Kelly] agrees to pay [plaintiff] 40% of all recoveries by way of settlement . . . . 'Recovery' includes, but is not limited to, all distributions to [Ms.] Kelley's estate from the Teitler Family Trust, i.e. distribution to which [Mr. Kelly] is entitled to 50% as [Ms.] Kelly's spouse." Additionally, the contingency fee agreement

---

[2] Former section 716 provided: "No holder of a claim against an estate shall maintain an action thereon, unless the claim is first filed with the clerk or presented to the executor or administrator, except in the following case: An action may be brought by the holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against any other property of the estate is expressly waived in the complaint; but no counsel fees shall be recovered in such action unless the claim was filed or presented as aforesaid." (Stats. 1931, ch. 281, § 716, p. 632.)

[3] Former Code of Civil Procedure section 1500 stated: "No holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against any other property of the estate is expressly waived in the complaint, but no counsel fees shall be recovered in such action unless such claim be so presented." (Stats. 1876, ch. 223, § 1, p. 103.)

provides: "It is agreed that [plaintiff] may retain his share in full out of the amount finally collected by settlement . . . . [Mr. Kelly] expressly assigns to [plaintiff] to the extent of his fees and disbursements, all assets and sums *realized* by way of settlement, arbitration, or trial." (Italics added.) Defendant's interpretation of the italicized word "realized" is too narrow. Fairly construed, the term "realized" refers to the interest, which is an asset, received by Mr. Kelly from the Dana Teitler Trust. In fact, the language cited above demonstrates the plaintiff and Mr. Kelly contemplated the contingent attorney fee would come from the distributions from the Dana Teitler Trust. As noted, Mr. Kelly under the settlement agreement was entitled to distribution of 40 percent of the Dana Teitler Trust.

Also, contrary to defendant's argument, the contingency fee agreement is clear as to when plaintiff's charging lien attached to Mr. Kelly's interest in the Dana Teitler Trust. As noted, the contingency fee agreement states in part: "It is agreed that [plaintiff] may retain his share in full out of the amount finally collected by settlement; and it is further agreed that [plaintiff] shall have all general, possessory, or retaining liens, and all special or charging liens known to the common law. [Mr. Kelly] expressly assigns to [plaintiff] to the extent of his fees and disbursements, all assets and sums realized by way of settlement. . . ." As we have explained, the lien right accrued at the time of the 2011 settlement and 2012 probate court approval of it. This is when Mr. Kelly secured his rights to a portion of the assets of the Dana Teitler Trust.

Finally, defendant argues all of Mr. Kelly's rights have been assigned to Ms. Fay. Defendant relies upon language in the settlement agreement which assigns Mr. Kelly's rights in the Dana Teitler Trust to Ms. Fay under specified circumstances. This assignment to Ms. Fay was to occur upon Mr. Kelly's death if he did not dispose of his interest in the Dana Teitler Trust prior to his passing. The settlement agreement provides that after Mr. Kelly's death, his interest if he had not disposed of it, is to be assigned as follows: "[Mr. Kelly] agrees [Ms. Fay] . . . may receive and [Mr. Kelly] hereby assigns to [Ms. Fay] fifty percent (50%) of [Mr. Kelly's] beneficial interest therein. As to [Mr. Kelly's] other fifty percent (50%) beneficial interest in said assets . . . if [Mr. Kelly] does

11

not so dispose of them, said other fifty percent (50%) interest therein may also be received by [Ms. Fay] and shall be deemed assigned to [Ms. Fay]." But, the assignment to Ms. Fay resulting from Mr. Kelly's death did not destroy plaintiff's pre-existing attorney fee lien rights.

We need not address plaintiff's remaining arguments. The probate court's ruling did not resolve all of the issues raised by plaintiff's attorney fee petition. For example, the value of Mr. Kelly's interest in the Dana Teitler Trust has not been resolved. We leave these and other issues in the good hands of the probate court.

## IV.  DISPOSITION

The probate court's December 16, 2013 order is reversed.  Upon remittitur issuance, the June 20, 2013 petition should be granted as discussed in the body of this opinion.  Plaintiff, Mark S. Novak, is entitled to recover his appeal costs from defendant, Michael Fay as trustee of the Dana Teitler Trust dated August 20, 1999.

CERTIFIED FOR PUBLICATION


TURNER, P. J.


We concur:


MOSK, J.


GOODMAN, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.