Filed 8/11/22  Weisberg v. Jaurigue Law Group CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DEVIN WEISBERG, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JAURIGUE LAW GROUP, et al., <br><br> Defendants and Respondents. | B309754 <br><br> Los Angeles County <br> Super. Ct. No. 20STCV05881) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Affirmed.

Devin Weisberg, in pro. per.; Law Offices of Howard A. Kapp and Howard A. Kapp for Plaintiff and Appellant.

KP Law, Zareh A. Jaltorossian for Defendants and Respondents.

————————————

## INTRODUCTION

Devin Weisberg, an attorney, appeals from the trial court's grant of a special motion to strike under Code of Civil Procedure section 425.16 (an anti-SLAPP motion), striking his complaint against respondents Jaurigue Law Group, Michael Jaurigue and Ryan Stubbs (collectively, Jaurigue). In 2013, Joseph Esquivel retained Weisberg to represent him in his divorce from Melanie Palomares. However, the representation was short-lived, and Esquivel terminated Weisberg as counsel in 2014. Jaurigue represented Palomares in the divorce proceedings. In 2018, Weisberg obtained a judgment against Esquivel for unpaid legal fees.

Weisberg's complaint against Jaurigue asserted various tort causes of action based on Jaurigue's 2017 distribution of $10,000 in divorce settlement funds to Esquivel. Weisberg contends he had a priority interest in the funds. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

A.  *Weisberg Asserts a Lien for Unpaid Client Fees*

In July 2013, Esquivel retained Weisberg to represent him in his divorce from Palomares. The engagement letter provided that Esquivel would pay Weisberg's fees on an hourly basis and gave Weisberg a contractual lien on any recovery obtained by Esquivel in the case. In December 2014, Esquivel terminated Weisberg's employment, and Weisberg filed and served a Notice of Charging Lien on Esquivel, Palomares and Jaurigue, asserting $11,698.36 in unpaid fees.

2

B.      *Jaurigue Distributes $10,000 to Esquivel*

In February 2016, Jaurigue informed Weisberg it was holding approximately $147,000 in its client trust account from a community real property sale and it was aware of Weisberg's lien.  Jaurigue also told Weisberg that neither Esquivel nor Palomares had received proceeds from the sale.

In December 2016, the family court issued a statement of decision awarding $21,339.87 to Esquivel on breach of fiduciary duty claims against Palomares.  The court did not order the division or distribution of any funds from the client trust account, because there were outstanding issues related to the valuation and division of the real property proceeds.

On June 28, 2017, the family court approved a stipulation and partial settlement by Esquivel and Palomares releasing $10,000 to Esquivel, as "a portion of his share of community funds."  Jaurigue then paid Esquivel $10,000 from its client trust account.

C.      *Weisberg Obtains a Declaratory Judgment*
        *Establishing the Validity of His Lien*

In January 2018, Weisberg filed a declaratory relief action against Esquivel.  In June 2018, the court ruled that Weisberg possessed "a valid and enforceable attorney fee charging lien against any and all claims or causes of action brought by [Esquivel]" in the divorce case, which "will attach to any recovery [Esquivel] may obtain, whether by arbitration award, judgment, settlement or otherwise."  The judgment totaled $16,273.79, comprised of $11,689.36 in attorney fees, $3,906.93 in prejudgment interest and $677.50 in costs.

3

D.    *Weisberg Sues Jaurigue and Files a Motion in the Divorce Case To Enforce His Lien*

On February 11, 2020, Weisberg filed the underlying complaint against Jaurigue, Palomares, Esquivel and Esquivel's new counsel. Weisberg alleged claims against Jaurigue for intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, fraud, conversion and intentional breach of fiduciary duty. Each of Weisberg's causes of action against Jaurigue was based on Jaurigue's 2017 $10,000 partial settlement payment to Esquivel. Weisberg alleged that during the 2017 settlement, Jaurigue interfered with his prospective economic relationship by failing to inform Esquivel and the family court of Weisberg's lien, and that Jaurigue "failed to interplead the funds." Weisberg's fraud claim alleged Jaurigue misrepresented that no one was attempting to circumvent Weisberg's lien and concealed its partial settlement payment to Esquivel. Weisberg also claimed Jaurigue's distribution of $10,000 to Esquivel amounted to conversion because that money "belonged to" Weisberg. In his cause of action for breach of fiduciary duty, Weisberg alleged Jaurigue owed him "a duty of loyalty to refrain from affirmative misrepresentations and not to conceal material facts," and that Jaurigue breached that duty when it made the partial settlement payment to Esquivel in 2017.

On February 19, 2020, Weisberg also brought a motion in the family law case to satisfy his lien from the Jaurigue client trust account funds. The family court denied Weisberg's motion as "premature."

E.    *Jaurigue's Anti-SLAPP Motion*

Jaurigue filed a special motion to strike Weisberg's complaint under Code of Civil Procedure section 425.16.[1] Jaurigue argued Weisberg's complaint arose from protected activity "in connection with an issue under consideration or review by a . . . judicial body . . . ."  (§ 425.16, subd. (e)(2).) Jaurigue also asserted Weisberg's claims failed on the merits because he had not obtained a judgment establishing the validity and amount of his attorney charging lien when Jaurigue made the $10,000 partial settlement distribution to Esquivel.  Weisberg conceded his claims arose from protected activity,  but claimed he was not required to have a judgment to enforce his lien and thus could establish a probability of success on the merits of his causes of action.

The trial court granted Jaurigue's anti-SLAPP motion, concluding Weisberg failed to establish a probability of success on any of his causes of action because he did not establish an enforceable lien until nearly a year after Esquivel received the $10,000 partial settlement payment.  The court noted Weisberg presented no authority establishing he was "entitled to his portion of fees out of a specific share of the disputed community property (the $10,000) at such a specific point in time before the resolution of the case."  The trial court also held Weisberg could not demonstrate harm or damages on his claims against Jaurigue, noting sufficient funds remained in the client trust account to satisfy Weisberg's lien and the family court had already specifically awarded more than $20,000 of those funds to Esquivel.  The court concluded:  "Because the amount currently

_____

[1]    Further undesignated statutory references are to the Code of Civil Procedure.

5

held in [Jaurigue]'s trust account is sufficient to satisfy Weisberg's lien, and because the family law court which is distributing the funds has explicitly rule[d] that Weisberg is not entitled to them at this point, Weisberg has not established that he had been harmed and cannot establish a probability of success on the merits as to any causes of action in this case."

Weisberg timely appealed.

## DISCUSSION

A.    *Section 425.16 and Standard of Review*

Under section 425.16, commonly known as the anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).) An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other

6

conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

In ruling on an anti-SLAPP motion, the court engages in a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*), accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) "To satisfy the second prong—the probability of prevailing—the plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to support a favorable judgment if the evidence submitted by the plaintiff is accepted," considering the pleadings and evidentiary submissions of both the plaintiff and the defendant. (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 962–963.) "Although "'the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'"" (*Ibid.*) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, 124 Cal.Rptr.2d 530, 52 P.3d 703], italics omitted (*Navellier*).)

We review de novo an order granting or denying an anti-SLAPP motion (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067), "considering the parties' pleadings and affidavits describing the facts on which liability or defenses are predicated" (*C.W. Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 668, 699; accord, § 425.16, subd. (b)(2); *Navellier, supra,* 29 Cal.4th at p. 89.)

B.     *Weisberg Has Not Established a Probability of Success on the Merits.*

In the trial court, Weisberg conceded the first prong of the anti-SLAPP inquiry—that his claims arise from activity protected as defined by section 425.16.  On appeal Weisberg also does not argue this point.  Thus, "[i]n this case, 'we bypass the initial inquiry because everyone agrees that the first hurdle in obtaining anti-SLAPP relief has been met." (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 425.)  Our inquiry is limited to the second prong—whether Weisberg has established a probability of success on the merits of his claims.

Weisberg's claims are all premised on the threshold assertion that he had an enforceable lien giving him priority to the $10,000 distributed to Esquivel in 2017.  On appeal, Weisberg generally challenges the trial court's assessment of the merits of his complaint, but he does not discuss his different theories of liability or the elements of his individual causes of action.  Rather, Weisberg contends he properly filed his declaratory relief action (to establish the validity and amount of his lien) after Esquivel and Palomares reached the $10,000 partial settlement agreement because his lien claim already established his

8

possessory rights to those funds.  Weisberg presents no other argument to support his contention that the allegations in his February 11, 2020 civil action had merit. Because we conclude Weisberg's lien was not enforceable at the time of the 2017 settlement, and because Weisberg has not briefed the elements of his causes of action on appeal, we treat any other merits arguments on his claims as waived.  (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363–364 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, "'the court may treat it as waived, and pass it without consideration.'"']; see also *Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 521 [""We are not bound to develop appellants' arguments for them."'"].)

1. *Weisberg's lien was not enforceable at the time of the 2017 settlement*

An attorney's lien against a client's future judgment or recovery, also known as a "charging lien," "may be used to secure either an hourly fee or a contingency fee."  (*Fletcher v. Davis* (2004) 33 Cal.4th 61, 66.)  Attorney liens are ordinarily created by contract, such as a retainer agreement that provides for deferred fees.  (See generally *Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531 (*Cetenko*); *Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 291 (*Little*).)  The attorney has a contractual right to be paid from a specific future source of funds, if recovered, but no right to be reimbursed for a lien tied to a client's recovery until judgment or settlement actually occurs. (*O&C, supra,* 42 Cal.App.5th at p. 572; *Novak v. Fay* (2015) 236 Cal.App.4th 329, 336.)  An attorney's lien on the judgment, based on a contract for fees, generally has priority over the claim of a

9

subsequent judgment creditor. (*Cetenko, supra,* 30 Cal.3d at pp. 535–536; *Hoover-Reynolds v. Superior Court* (1996) 50 Cal.App.4th 1273, 1279 ["an attorney's charging lien may attach and have priority to judgments for ordinary debts," though not against a child support award].)

"A third party that impairs an attorney's rights under such a lien may be subject to liability for tortious interference with contractual relations or prospective economic advantage." (*Little, supra,* 202 Cal.App.4th at p. 291; accord, *Siciliano v. Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745, 752–753.) Attorneys also "may maintain conversion actions against those who wrongfully withhold or disburse funds subject to their attorney's liens." (*Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 45 [triable issues existed whether attorney had an enforceable attorney charging lien establishing right to possess settlement funds disbursed to other "parties].) "'However, a mere contractual right of payment, without more, will not suffice.'" (*Ibid.*)

An attorney's lien "is only enforceable after the attorney adjudicates the value and validity of the lien in a separate action against the client." (*Mojtahedi v. Vargas* (2014) 228 Cal.App.4th 974, 978 (*Mojtahedi*); see also *Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1177 (*Carroll*) ["the attorney's lien claim must be litigated in a separate action, even where the attorney has a contract with the client"]; *Hansen v. Jacobsen* (1986) 186 Cal.App.3d 350, 356 ["even though a contractual lien continues to be viable after discharge, a subsequent, independent action is required to establish the amount of the lien and to enforce it"].) Jaurigue relies on *Mojtahedi*, as did the trial court when it concluded Jaurigue did not act improperly when it made

10

the $10,000 partial settlement payment to Esquivel because Weisberg had no enforceable lien at the time of that payment.

In *Mojtahedi*, an attorney filed a complaint against two former clients' successor attorney, seeking to recover a portion of a settlement payment the successor attorney had obtained for the clients. (*Mojtahedi, supra,* 228 Cal.App.4th at p. 976.) The trial court sustained without leave to amend the successor attorney's demurrer to the complaint because the plaintiff attorney failed to establish the amount or enforceability of his purported lien in an independent declaratory relief action against the clients. (*Id.* at pp. 976-977.) The *Mojtahedi* court concluded that without bringing a separate action against the client, the attorney had "omitted this essential step of establishing his entitlement to a particular portion of the settlement proceeds" and could not establish "the existence, amount, and enforceability of his lien on the settlement money." (*Id.* at pp. 978-979.) "Without first establishing a right to any portion of his clients' settlement proceeds, plaintiff in this case lacks any basis to assert that defendant fraudulently withheld any money from him." (*Id.* at p. 979.)

Weisberg does not dispute that at the time of the 2017 payment to Esquivel, he had not instituted any action to establish the validity or the amount of his claimed lien against Esquivel. Weisberg also does not dispute that he failed to make any request to the family court to delay Esquivel's recovery or receipt of settlement proceeds until he could establish the validity of his lien. As a result, when Esquivel and Palomares reached a partial settlement, Weisberg had a lien claim but not an enforceable lien. And, while Weisberg was entitled to assert his lien claim by filing a notice of lien in the family law action, the

11

court had "no power to determine in that action whether [Weisberg]'s lien claim was valid or invalid." (*Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 329 (*Brown*).)

In 2017 Weisberg had not obtained a judgment establishing the amount and validity of his alleged lien and had not taken any steps to secure his interests beyond notifying the family court and Jaurigue of his lien claim. Because Weisberg had yet to establish the value or validity of his purported lien at the time Jaurigue distributed the $10,000 settlement payment to Esquivel, Weisberg had no immediate right to receive a payment from those funds and lacked any basis for asserting claims against Jaurigue for interference with such a right. (*Mojtahedi, supra,* 228 Cal.App.4th at pp. 978-979 ["Without an enforceable lien, plaintiff cannot prove that he has a right to a portion of the settlement money in [an] action against defendant, who holds the settlement funds in his client trust account."])

Weisberg argues that because he subsequently established the validity and enforceability of his lien, he can now retroactively assert priority rights to the previously distributed settlement funds. As support for this position, Weisberg notes that in *Mojtahedi* the court contemplated that the independent action to establish the amount and validity of an attorney lien will be brought "after" the client obtains a recovery. (*Mojtahedi, supra,* 228 Cal.App.4th at p. 976 ["after the client obtains a judgment, the attorney must bring a separate, independent action against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it"]; accord, *Brown, supra,* 116 Cal.App.4th at p. 329; *Carroll, supra,* 99 Cal.App.4th at p. 1173.) This approach presumably reflects a scenario in which it is not possible to determine the amount of a

12

contingent lien until the judgment is entered or a settlement is confirmed. Undoubtedly many attorney liens are based on contingent fee contracts that must necessarily wait until a judgment or settlement is completed to ascertain the fees that are due. (*Kroff v. Larson* (1985) 167 Cal.App.3d 857, 861; *Bandy v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 230, 235.) But Weisberg cites no authority for the proposition that after Esquivel terminated his employment, he was required to wait to file an independent civil action to establish the validity and amount of his lien based on the hourly fees he earned prior to the termination.

Under Weisberg's approach, Jaurigue should have refused to distribute the settlement funds to Esquivel in anticipation of Weisberg perfecting his lien and making a claim for those same funds. The law does not impose such foresight on a payor prior to the perfection of a lien. While Weisberg now has a right to satisfy his attorney lien from Esquivel, he had no such right when Jaurigue paid the $10,000 settlement payment to Esquivel in 2017.

### 2. *Jaurigue's knowledge of Weisberg's putative lien did not require it to withhold settlement funds from Esquivel*

Weisberg also claims that because Jaurigue was on notice of his lien claim it is potentially liable for damages for paying out funds to Esquivel to which it knew Weisberg had asserted priority. However, filing a notice of attorney's lien in a pending action does not establish the validity of the lien as a matter of law or automatically stay the distribution of recovery proceeds. (See *Valenta v. Regents of University of California* (1991) 231 Cal.App.3d 1465, 1470 ["while a previously discharged attorney

13

may file a notice of lien in a pending action, an independent action is required to establish the existence and amount of the lien and to enforce it"]; see also *Carroll, supra,* 99 Cal.App.4th at p. 1173 ["a notice of lien is not the same as the lien (the security interest) or the lien claim. . . . lack of precision in the use of these terms all too often creates confusion"].)

"The principal function served by filing a notice of attorney's lien seems to be to assist a discharged attorney who faces the risk that the former client may 'settle around' the lien," "in the hope that" any settlement be made jointly payable to the attorney. (*Carroll, supra,* 99 Cal.App.4th at p. 1176.) Courts may consider the existence of a lien claim in settlement and distribution of judgment proceeds. (See *Brown, supra,* 116 Cal.App.4th at p. 34 [trial court had discretion to take an attorney's lien claim into consideration when directing payment of recovery proceeds before the validity of the lien was established].) Although a notice of attorney's lien may offer some leverage to the attorney who files it, that attorney "need not make any showing in the underlying action that the lien is probably valid;" consequently, "appellate courts have consistently held that the trial court remains without jurisdiction to assess the validity of the attorney's lien despite the fact that a notice of lien was filed in the underlying action." (*Ibid.*)

Weisberg argues that we should adopt the holding from *Miller v. Rau* (1963) 216 Cal.App.2d 68 (*Miller*), regarding liability against an attorney who distributes funds to a party. In *Miller*, an attorney, who controlled profits of a joint aircraft sales venture, was found liable for conversion for distributing profits solely to his clients (silent partners who were joint venturers with the plaintiff) while a declaratory action to confirm the plaintiff's

14

contractual rights to the profits was pending.  The court held that "where one receives money as an agent, to which his principal has no right, and where he receives notice not to pay to his principal prior to disbursement of the funds, an action for money had and received lies against such party." (*Id.* at p. 76.)  The facts and equitable considerations in *Miller* bear little resemblance to those in Weisberg's case.

While *Miller* and its progeny stand for the proposition that an equitable lien may be imposed in certain cases where an attorney is on notice of a third party's contractual right to funds received by that counsel on behalf of their client, the holding in *Miller* is driven by equitable considerations and does not provide a clear and unqualified rule.  (See *Farmers Ins. Exchange v. Smith* (1999) 71 Cal.App.4th 660, 671 [discussing *Miller*].)  "An equitable remedy, such as an equitable lien, after all, has no independent existence by itself. . . . Unless a court of equity actually first creates an equitable lien and then enforces it, it is the functional equivalent of a tree falling silent in a vacant forest. True, the *basis* for the lien might come into existence prior to its enforcement, but the lien itself cannot come into existence until a court of equity decides that the equities require it.  In many cases of course, such as the typical lien a substituted-out attorney can assert on the proceeds of the ultimate disposition of the case, the certainty that a court of equity will impose an equitable lien give it the trappings of independent existence.  But it is still a semantic trap . . . to assume that a lien has already come into being" merely because a third-party claim to a given pool of money exists.  (*Id.* at 671.)  Until a valid attorney's lien is established through a separate action, there is no requirement for counsel or the court to honor it.

15

Weisberg argues that even if his lien was not yet enforceable in 2017 it is inequitable that Jaurigue paid any settlement funds to Esquivel when Jaurigue knew Weisberg had a lien claim. Certainly, under some circumstances "it might well constitute a denial of substantial justice" for a trial court with notice of an attorney lien claim to direct payment of recovery proceeds "without giving [the attorney] a fair opportunity to first litigate the validity of his lien claim in a separate action." (*Brown, supra,* 116 Cal.App.4th at p. 335 [although trial court had no power to adjudicate an attorney lien's validity, on remand it had discretion to "weigh" the existence and priority of the putative lien when assessing the judgment creditor's application for judgment proceeds].) Likewise, a settlement may be found inequitable and not entitled to court approval where it plainly constitutes a client's attempt to defeat an attorney's lien and to "appropriate the whole of a judgment in his favor without paying for the services of his attorney." (*Epstein v. Abrams* (1997) 57 Cal.App.4th 1159, 1169–1170 (*Epstein*) [reversing order approving settlement in which a former client executed a satisfaction of a fee judgment in his favor while attorney's separate action to establish the validity of his attorney's lien against the fee judgment was pending; attorney was entitled to protection of his equitable interest in the fee judgment]; accord, *Little, supra,* 202 Cal.App.4th at p. 295 ["clients who execute lien-creating fee agreements give their attorneys "'an equitable right,'" the basis of which is "'the natural equity that a party should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment."'].) The facts of those cases are not akin to the circumstances here.

16

In contrast to *Miller, Brown and Epstein*, in which independent actions to establish the plaintiff's profit share (in *Miller*) and attorney fee liens (in *Brown* and *Epstein*) were pending at the time that the entirety of the disputed funds were distributed to other parties, here Weisberg filed no independent action against Esquivel prior to the time Jaurigue made the settlement payment. And in contrast to *Epstein* and *Little* (cases that involved settlements in which the clients executed satisfactions of fee judgments that completely extinguished the plaintiff attorneys' ability to obtain fee reimbursement under their liens), here the interlocutory settlement payment did not "appropriate the whole of the judgment" in Esquivel's favor.

Although the exact division of funds remaining in Jauregui's client trust account remains unresolved, nearly $135,000 is still in the account (after the $10,000 distribution to Esquivel and a $2,725.26 payment to Palomares). The trial court already awarded Esquivel damages of $21,339.87 on part of his claims against Palomares. Given these circumstances, Weisberg may still be able to enforce his now-established lien against Esquivel's recovery, once judgment is entered or another settlement reached, despite the partial settlement payment Jauregui made to Esquivel in 2017.

## DISPOSITION

The order of the trial court is affirmed.  Jaurigue shall recover its costs on appeal.


WISE, J.*


We concur:


PERLUSS, P. J.


SEGAL, J.

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution